## Langford v. Monteith.

1. Where an act of Congress admitting a State into the Union, or organizing a territorial government, provides, in accordance with a treaty stipulation, that the lands in the possession of an Indian tribe shall not be a part of such State or Territory, the new government has no jurisdiction over them. *Harkness* v. *Hyde* (98 U. S. 476) qualified and explained.
2. Where, in a civil suit before a justice of the peace of the Territory of Idaho, it appears by the answer. c˙ the defendant, verified by his affidavit, that the question of title to real estate is necessarily involved, the justice should certify the case to the District Court for trial. If he proceeds to ˙try it, it must, on appeal from his judgment, be dismissed.

Error to the Supreme Court of the Territory of Idaho. The facts are stated in the opinion of the court.

*The Attorney-General* for the plaintiff in error.
*Mr. Benjamin F. Butler, contra.*

Mr. Justice Miller delivered the opinion of the court.

Langford, the plaintiff in error, who was plaintiff below, brought an action before a justice of the peace in the nature of forcible detainer, to recover of Charles E. Monteith the possession of buildings and grounds occupied by the latter under the agent of the United States for the Nez Percé Indians.

The plaintiff, in his petition, charges that under a lease from him the defendant entered with a condition to deliver possession to the plaintiff on ten days' notice, which was given.

The defendant answers by alleging that at the time of making the lease he was in possession under John B. Monteith, Indian agent; that he was induced to take the lease by the false representation of the plaintiff that he was the owner of the property; that said buildings and grounds were then and are now the property of the United States; and that the government had issued orders to defend its possession against the plaintiff.

Another allegation of the defence is that the property is situated within an Indian reservation, to which the Indian title has never been extinguished, and therefore forms no part of the Territory of Idaho. Of course, if this latter allegation be

true, neither the justice of the peace before whom the case was first tried, nor the District Court to which it afterwards came by appeal, had any jurisdiction over it. The opinion of this court in *Harkness* v. *Hyde* (98 U. S. 476) is relied on by the defendant.

The principle announced in that case is sound, namely, that when, by the act of Congress organizing a territorial government, lands are excepted out of the jurisdiction of the government thus brought into existence, they constitute no part of such Territory, although they are included within its boundaries. Congress, from which the power to exercise the new jurisdiction emanates, has undoubted authority to exclude therefrom any part of the soil of the United States, or of that whereto the Indians have the possessory title, when, by our solemn treaties with them, a stipulation to that effect has been made.

The applicability of this doctrine to the jurisdiction of places in which the United States have constructed permanent forts, arsenals, &c., before such governments are organized, will be seen at once. Congress has also acted on this principle on the admission of new States into the Union. The act for the admission of Kansas (12 Stat. 126), after describing its exterior boundaries, and declaring that the new State is admitted into the Union on an equal footing with the original States, in all respects whatever, adds, that nothing contained in the Constitution of the State shall be construed " to include any territory which by treaty with such Indian tribe is not, without the consent of said tribe, to be included within the territorial limits or jurisdiction of any State or Territory ; but all such territory shall be excepted out of the boundaries and constitute no part of the State of Kansas, until said tribe shall signify their assent to the President of the United States to be included within said State." Between the United States and the Shawnees a treaty then existed by which the United States guaranteed that their lands should never be brought within the bounds of any State or Territory, or subject to the laws thereof. In *United States* v. *Ward* (1 Woolw. 1), the Circuit Court held that the State courts had no jurisdiction in the lands of the Shawnees, and this was repeated in *United States* v. *Stahl*, id. 192.

The act of Congress of March 3, 1863, to provide a temporary government for the Territory of Idaho (12 Stat. 808), contains a clause precisely similar to that in the act admitting Kansas into the Union.

This court, in *Harkness* v. *Hyde* (*supra*), relying upon an imperfect extract found in the brief of counsel, inadvertently inferred that the treaty with the Shoshones, like that with the Shawnees, contains a clause excluding the lands of the tribe from territorial or State jurisdiction. In this it seems we were laboring under a mistake. Where no such clause or language equivalent to it is found in a treaty with Indians within the exterior limits of Idaho, the lands held by them are a part of the Territory and subject to its jurisdiction, so that process may run there, however the Indians themselves may be exempt from that jurisdiction. As there is no such treaty with the Nez Percé tribe, on whose reservation the premises in dispute are situated, and as this is a suit between white men, citizens of the United States, the justice of the peace had jurisdiction of the parties, if the subject-matter was one of which he could take cognizance.

Sect. 347 of the act to regulate proceedings in civil cases in the courts of that Territory declares that, on a trial before a justice of the peace, if it appear from the plaintiff's own showing, or from the answer of the defendant verified by his oath, that the determination of the action will necessarily involve the decision of a question of title to real property, the justice of the peace shall suspend all further proceedings, and certify the case to the District Court of the county, which shall thereafter have jurisdiction over the case as if originally brought in that court.

The record is imperfect, but it appears that an appeal was taken from the judgment of the justice of the peace to the District Court, and that the latter overruled the motion of the defendant to dismiss the case because the justice of the peace was without jurisdiction to try it. The same matter was urged in the Supreme Court on appeal from the judgment of the District Court.

We are of opinion that the justice of the peace had no jurisdiction to try the case after the sworn answer of the defendant

was filed, and that it was his duty to certify it for primary trial to the District Court. When removed there on appeal, it should have been dismissed, because there could have been no lawful trial before the justice.

That the issue tendered by the sworn answer of the defendant involved the title is clear. If he was holding under the United States, his attornment to the plaintiff and taking a lease were void. The question would then arise, whether the title of plaintiff or that of the United States, set up by defendant, was valid. For the trial of that title, the action brought by the plaintiff and the forum in which it was commenced were inappropriate. The judgment of the Supreme Court of Idaho on the effect of their own code of procedure in this respect will not be reversed here.

*Judgment affirmed.*