946 P.2d 459

**STATE of Arizona, Plaintiff–Appellee.**

v.

**Akhtar ZAMAN (Tahirkhaili)
Defendant-Appellant.**

No. CV–96–0328–PR.

Supreme Court of Arizona,
En Banc.

Oct. 9, 1997.

Stephen G. Udall, Apache County Atty. by Karl C. Eppich, Deputy County Atty., St. Johns, for State.

Trebon & Fine P.C. by John J. Trebon, Flagstaff, for Akhtar Zaman (Tahirkhaili).

## OPINION

MARTONE, Justice.

The issue before us is whether a state court has subject matter jurisdiction in an action brought by the State of Arizona, at the request of a member of an Indian tribe, against a non-member, non-Indian father, to determine paternity, custody, and child support obligations involving a child eligible for tribal membership. We hold that the state court has subject matter jurisdiction.

## I. Facts

Barbara Wilson is an enrolled member of the Navajo Tribe. Akhtar Zaman is neither a member nor an Indian. Both parties lived and worked on the Navajo Reservation.

Wilson and Zaman were involved in a romantic relationship from 1982 until 1987. Sahira Zaman was born on October 19, 1987, and, though eligible for membership in the Navajo Tribe, is not a member.

At Wilson's request, the State of Arizona filed an action in superior court to have Zaman adjudged Sahira's father, to order him to pay child support, and to grant Wilson custody.[1] Zaman moved to dismiss for lack of subject matter and personal jurisdiction, and improper service of process. The court denied the motion. Several years later, Zaman filed a motion for summary judgment on the same issues. The court again denied the motion.

The court found that Zaman was Sahira's father, that he owed $29,792 in back child support, and set child support at $600 per month. It granted Wilson custody and established guidelines for visitation.

The court of appeals reversed, and held that the superior court lacked subject matter jurisdiction because "state action [would] infring[e] on the right of reservation Indians to make their own laws and be ruled by them." *State v. Zaman*, 187 Ariz. 81, 83–84, 927 P.2d 347, 349–50 (App.1996). Believing that an important issue of law had been decided incorrectly, we granted review. Rule 23(c)(4), Ariz. R. Civ.App. P.

## II. Analysis

The State of Arizona, a non-Indian party, brought this action against Zaman, also a non-Indian. Jurisdiction over an action between two non-Indian parties presumptively lies in state court.

---

1. The State brought this action pursuant to 42 U.S.C. § 654 (1994), A.R.S. §§ 12–841 to –852 (1992)(current version at A.R.S. §§ 25–801 to –815 (Supp.1996)), and A.R.S. §§ 12–2451 to –2462 (1994)(current version at A.R.S. §§ 25–501 to –517 (Supp.1996)). The State is authorized to bring actions to establish paternity and compel child support. The State "shall not seek or de- fend any ancillary matters such as custody or visitation." A.R.S. § 12–843(B)(1992) (current version at A.R.S. § 25–803(B)(Supp.1996)); *see also* § 12–2456(C)(1994)(current version at A.R.S. § 25–509(C) (Supp.1996)). Zaman did not challenge the State's involvement in the custody and visitation portions of this action.

On the other hand, Wilson, the real party in interest, is a member of the Navajo Tribe. Sahira, the child who is at the heart of this matter, although a non-member, is eligible for membership in the Navajo Tribe. The relationships arose on the Navajo reservation.

## A. The infringement test

 Absent an act of Congress, state court jurisdiction over litigation involving Indians and non-Indians for transactions arising on the reservation depends on "whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." *Fisher v. District Court,* 424 U.S. 382, 386, 96 S.Ct. 943, 946, 47 L.Ed.2d 106 (1976) (quoting *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959)). Zaman has not argued that federal preemption acts as a barrier to state court jurisdiction over non-Indians, and we have found no authority to support such a proposition.[2] Thus, state court jurisdiction exists unless the action would unduly infringe on Indian self-governance.

 The infringement test originated in *Williams v. Lee* from an attempt by a non-Indian to sue Indians in state court for on-reservation conduct. The right of the Indian defendants to be governed by their tribe's laws prevented the non-Indian plaintiff from suing them in state court. In the four decades following *Williams,* only in actions "by non-Indians against Indians or ... between Indians ... [has state court jurisdiction been found to] intrude[ ] impermissibly on tribal self-governance." *Three Affiliated Tribes v. Wold Eng'g (Wold I ),* 467 U.S. 138, 148, 104 S.Ct. 2267, 2274, 81 L.Ed.2d 113 (1984). The application of the infringement test in the adjudicatory setting has protected *Indian defendants* from nonconsensual state court jurisdiction. *See, e.g., Williams,* 358 U.S. at

219–20, 79 S.Ct. at 270–71; *Fisher,* 424 U.S. at 386, 96 S.Ct. at 946.

Zaman's challenge to state court jurisdiction presents us with the obverse of the ordinary claim structure. Zaman, a non-Indian, seeks to use a protection afforded Indians to defeat the claim of an Indian who chooses the state forum. This attempt to clothe oneself in the immunity afforded another has already been rejected by the Supreme Court. *Wold I,* 467 U.S. at 148, 104 S.Ct. at 2274.

The Indian interests which the infringement test seeks to protect are not present when an Indian plaintiff brings an action against a non-Indian defendant in state court. So long as the Indian party selects the state forum, there is nothing for the infringement test to protect against. Thus, the Supreme Court "repeatedly has approved the exercise of jurisdiction by state courts over claims by Indians against non-Indians, even when those claims [arise] in Indian country." *Id.*

The infringement test protects Indians. It is not an offensive tool to be used against them. Thus, the infringement test will not preclude state court jurisdiction where an Indian plaintiff brings an action against a non-Indian defendant. *See id.* at 148–49, 104 S.Ct. at 2274.

Zaman argues that *Wold I* should be limited to cases in which the tribe itself brings the action. But *Wold I* is not so limited: "self-government is not impeded when a State allows an *Indian* to enter its courts on equal terms with other persons to seek relief against a non-Indian concerning a claim arising ·in Indian country." *Id.* (emphasis added). We do not read the Court's acknowledgment that state court jurisdiction is "particularly compatible with tribal autonomy" when the tribe itself is the plaintiff as a limitation on the Court's general holding. *Id.* at 149, 104 S.Ct. at 2274. Nor has Za-

---

**2.** Preemption as a bar to state court jurisdiction was neither raised in the Petition for Review nor in the Response. The issue was not raised in the briefs in the court of appeals. Rather, Zaman acknowledged in his opening brief that neither ·25 U.S.C. § 1911 (1994) nor 25 C.F.R. §§ 11.22 and 11.30 (1988) resulted in federal preemption. There is no comprehensive regulatory scheme

governing child support, paternity, and custody, outside of the adoption and foster care context, that would indicate an intent by Congress to oust the state court of jurisdiction over these issues. If Zaman intended to raise preemption as a barrier to state court jurisdiction, we reject that contention.

man cited any authority for his contention. Our own research revealed only one case involving a non-Indian's challenge, and it concluded that state court jurisdiction existed. *Brooks v. Nance*, 801 F.2d 1237, 1239–40 (10th Cir.1986).

■ Zaman also argues that the infringement test seeks to protect the collective interests of the tribe, not the interests of individual tribal members. Thus, he argues, where the tribe itself is the plaintiff, there would be no infringement of tribal interests, but where a tribal member is the plaintiff, state court jurisdiction would not exist if the tribe had a sufficient interest in the litigation. We disagree.

We are unaware of any Supreme Court case that has considered the collective interests of the tribe, in contrast to an Indian's rights, in determining the adjudicatory authority of state courts under the infringement test. "Tribal interests" have been used as a backdrop for the interpretation of federal law in preemption cases, *Three Affiliated Tribes v. Wold Eng'g* (*Wold II*), 476 U.S. 877, 884, 106 S.Ct. 2305, 2310, 90 L.Ed.2d 881 (1986), and in regulatory actions concerning tribal enterprises and government programs, *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980). But in actions involving the rights and interests of individual Indians, the relevant inquiry is the infringement of individual rights.

> To be sure, when Congress has legislated on Indian matters, it has, most often, dealt with the tribes as collective entities. But those entities are, after all, composed of individual Indians, and the legislation confers individual rights. This Court has therefore held that "the question has always been whether the state action infringed on the right of *reservation Indians* to make their own laws and be ruled by them."

*McClanahan v. State Tax Comm'n*, 411 U.S. 164, 181, 93 S.Ct. 1257, 1267, 36 L.Ed.2d 129 (1973)(quoting *Williams*, 358 U.S. at 220, 79 S.Ct. at 271). The adjudicatory authority of state courts in matters involving an Indian party depends upon the Indian party's interest, not on the interests of the tribe as a whole.

■ Congress may, of course, enact legislation to protect the collective interests of the tribe. It has done so with the Indian Child Welfare Act (ICWA). 25 U.S.C. §§ 1901–1963 (1994). "[T]he rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society" caused Congress to provide exclusive tribal court jurisdiction over certain child welfare actions. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 37, 109 S.Ct. 1597, 1602, 104 L.Ed.2d 29 (1989)(quoting H.R.Rep. No. 95–1386, at 23 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7546). But Congress limited such actions to proceedings resulting in the termination of the Indian parent's rights. 25 U.S.C. §§ 1903, 1911. Child placement proceedings in divorce actions in which custody is awarded to one of the parents were explicitly removed from the reach of the ICWA. 25 U.S.C. § 1903(1).

The ICWA was enacted to prevent the "wholesale removal" of Indian children from their families and their tribes through adoption and foster care placement, usually with placement in non-Indian homes. *Holyfield*, 490 U.S. at 32–37, 109 S.Ct. at 1599–1602. But the child custody proceeding at issue here does not raise the same concerns. There is no threat that Sahira will not be exposed to her Indian heritage. Thus, although the ICWA is inapplicable, even its rationale would not support Zaman's contention.

State court jurisdiction over actions brought by Indians against non-Indians does not infringe upon the rights of Indians to make their own laws and to be ruled by them. *Wold I*, 467 U.S. at 148, 104 S.Ct. at 2274. But Indian rights would be infringed if we permitted a non-Indian to challenge an Indian's choice of the state forum. Members of tribes are citizens of the United States and of the state in which they reside and thus have the right to bring actions in state court. *McClanahan*, 411 U.S. at 172–73, 93 S.Ct. at 1262. This right would be substantially hindered if non-Indians could prevent Indians from seeking redress in state court.

Zaman argues that *Fisher v. District Court*, 424 U.S. 382, 390–91, 96 S.Ct. 943, 948, 47 L.Ed.2d 106 (1976), permits the denial of an Indian's right to bring an action in state court. But *Fisher* merely limits a tribal member's right to bring an action in state court when the action is against another tribal member. That part of *Fisher* upon which Zaman relies does nothing more than acknowledge that state courts, absent a governing act of Congress, are generally without jurisdiction over tribal member defendants for on-reservation activities. If an Indian's right to bring an action in state court is to be meaningful, we must respect the Indian plaintiff's choice of forum when no Indian is subjected to state court jurisdiction without consent.

Zaman is a non-Indian. He is not entitled to the protections afforded Indian defendants. Nor can we perceive of any threat to Indian self-governance by requiring a non-Indian to answer the complaint of an Indian in state court. The state court had subject matter jurisdiction over this action.

## B. Exclusive or concurrent jurisdiction

Zaman argues that if the state court has jurisdiction, there is concurrent jurisdiction in the Navajo courts, and the state court should have exercised judicial restraint. But this argument assumes that the Navajo courts have jurisdiction, an uncertain proposition at best.

Zaman contends that tribal courts have civil jurisdiction over the on-reservation activities of non-Indians "unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mut. Ins. Co. v. La-Plante*, 480 U.S. 9, 18, 107 S.Ct. 971, 977, 94 L.Ed.2d 10 (1987). A unanimous Supreme Court, however, recently rejected the argument that *LaPlante* provides tribes with broad jurisdiction over non-Indians for on-reservation conduct. *Strate v. A–1 Contractors*, —— U.S. ——, ——, 117 S.Ct. 1404, 1412–13, 137 L.Ed.2d 661 (1997). *LaPlante* describes an exhaustion rule. *Id.* at ——, 117 S.Ct. at 1413. It does not purport to establish tribal court adjudicatory authority. *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), remains as

the "pathmarking case concerning tribal civil authority over nonmembers." *Strate*, —— U.S. at ——, 117 S.Ct. at 1409.

■ *Montana* extended into the civil context the general principle expressed in *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), that the inherent sovereign authority of tribes does not include the right to exercise jurisdiction over non-Indian defendants. *Montana*, 450 U.S. at 565, 101 S.Ct. at 1258. "[T]he Indian tribes have lost any 'right of governing every person within their limits except themselves.' " *Id.* (quoting *Fletcher v. Peck*, 6 Cranch 87, 147, 3 L.Ed. 162 (1810) (Johnson, J., concurring)). Tribal courts do not have civil jurisdiction over non-members unless one of two exceptions applies. *Montana*, 450 U.S. at 565, 101 S.Ct. at 1258. First, tribal courts may exercise jurisdiction over non-Indians who engage in consensual business relationships with tribes. *Strate*, —— U.S. at ——, 117 S.Ct. at 1415; *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141, 102 S.Ct. 894, 903, 71 L.Ed.2d 21 (1982) (affirming a tribe's power to tax non-Indians who conduct business on the reservation). Second, tribal courts have jurisdiction over conduct on fee lands within the reservation if the conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566, 101 S.Ct. at 1258.

■ Child welfare actions do not involve consensual business relations and therefore do not fall within the first *Montana* exception. Child welfare actions may affect the welfare of the tribe and thus arguably fall within the second *Montana* exception. But *Strate* warned that this second exception should not be interpreted so that "the exception ... severely shrink[s] the rule." *Strate*, —— U.S. at ——, 117 S.Ct. at 1415. "Read in isolation, the *Montana* rule's second exception can be misperceived. Key to its proper application, however, is the Court's preface: 'Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations *among* members, and to prescribe rules of inheritance for members.... But [a tribe's

inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations.'" *Id.* at ——, 117 S.Ct. at 1416 (alteration in original)(quoting *Montana,* 450 U.S. at 564, 101 S.Ct. at 1257–58) (emphasis added).

We need not reach this important issue here. Having determined that the state court does have jurisdiction, the remaining issue is one of judicial restraint. Even if such a doctrine applied, we believe it would be unwise to hold that the state court should refrain from exercising certain state court jurisdiction in favor of uncertain tribal court jurisdiction.

Wilson, as Sahira's mother, has a right to bring this action in state court. There is no countervailing tribal interest in helping Zaman, a non-Indian, escape his legal obligations to Wilson, a member of the Navajo Tribe, and Sahira, a child eligible for membership in the Tribe. Tribal court jurisdiction exists for the protection and benefit of tribal members. It would stand federal Indian law on its head to allow a non-Indian to exploit a tribal immunity to the disadvantage of a tribal member and her child. The state court properly exercised subject matter jurisdiction.

### III. Conclusion

We vacate the opinion of the court of appeals and remand to the court of appeals for resolution of the issues properly raised on appeal but not decided.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN, J., and ROBERT D. MYERS, Judge, concur.

MOELLER, J., did not participate in the determination of this matter. ROBERT D. MYERS, Presiding Judge, Superior Court of Arizona in Maricopa County, was appointed to sit in his stead pursuant to Ariz. Const. art. VI, § 3.