984 P.2d 528

**STATE of Arizona, Plaintiff–Appellee,**

**v.**

**Akhtar ZAMAN (Tahirkhaili), Defendant–Appellant.**

**No. CV–98–0135–PR.**

Supreme Court of Arizona,
En Banc.

June 18, 1999.

Stephen G. Udall, Apache County Attorney By Shad L. Brown, Deputy County Attorney, St. Johns, Attorneys for the State of Arizona.

Trebon & Fine By John J. Trebon, Flagstaff, Attorneys for Akhtar Zaman (Tahirkhaili).

## OPINION

MARTONE, Justice.

¶ 1   In *State v. Zaman*, 190 Ariz. 208, 946 P.2d 459 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1167, 140 L.Ed.2d 177 (1998), we held that the superior court has jurisdiction over an action brought by the state against a non-Indian father to determine paternity, custody, and child support obligations. We vacated the contrary opinion of the court of appeals. On remand, the court of appeals held that a county sheriff could not serve process on a non-Indian within the boundaries of the reservation. *State v. Zaman*, 261 Ariz. Adv. Rep. 28, No. 1 CA–CV 94–0259, 1998 WL 25559 (App. Jan. 27, 1998). We granted review and again vacate the opinion of the court of appeals.

¶ 2   In reaching its conclusion, the court of appeals relied upon *Francisco v. State*, 113 Ariz. 427, 556 P.2d 1 (1976), and *Dixon v. Picopa Construction Co.*, 160 Ariz. 251, 772 P.2d 1104 (1989). But each of these cases held that a sheriff could not serve process on an Indian while the Indian was on his tribe's reservation. These cases have no application to the question of whether a sheriff may serve process on a non-Indian. For on-reservation activities, the status of the defendant as an Indian or non-Indian is the *sine qua non* of federal Indian law. *See, e.g., Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978)(holding tribe does not have jurisdiction over crimes committed by *non-Indians* on the reservation); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (holding state

has no power to tax income of *Indian* from on-reservation sources); *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881) (holding state has jurisdiction over crimes committed by *non-Indian* against *non-Indian* on the reservation); 18 U.S.C. §§ 1152–53 (granting federal jurisdiction over crimes committed by *Indians* against *non-Indians* and by *non-Indians* against *Indians* on the reservation and over major crimes committed by *Indians* on the reservation). Indeed, were it not for this distinction, federal Indian law, as we know it, would not exist. *See generally*, Felix S. Cohen, *Handbook of Federal Indian Law* (1982 ed.).

¶ 3 The Supreme Court of the United States held over 100 years ago that when a state has civil jurisdiction over a non-Indian, it has jurisdiction to serve process on that non-Indian on a reservation. *Langford v. Monteith*, 102 U.S. 145, 147, 26 L.Ed. 53, 54 (1880) (a reservation within a territory is "subject to [territorial] jurisdiction, so that process may run there, however the Indians themselves may be exempt from that jurisdiction"); *see Organized Village of Kake v. Egan*, 369 U.S. 60, 72, 82 S.Ct. 562, 569, 7 L.Ed.2d 573 (1962); *see also* William C. Canby, Jr., *American Indian Law* 151 (2d ed. 1988) ("State courts have jurisdiction over suits by non-Indians against non-Indians, even though the claim arose in Indian country, so long as Indian interests are not affected. State court process may be served in Indian country in connection with such a suit.").

¶ 4 We hold that service of process by the sheriff on a non-Indian within that part of the reservation within Arizona is valid. This would ordinarily conclude our opinion, but the theory advanced by the dissent warrants consideration.

¶ 5 The dissent argues that the rationale of *Francisco* can be extended to non-Indians, and goes so far as to claim that *McClanahan v. State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), supports that extension. *See post*, at ¶¶ 21–22. On the contrary, the question in *McClanahan* was "whether the State may tax a reservation *Indian* for income earned exclusively on the reservation." *McClanahan*, 411 U.S. at

168, 93 S.Ct. at 1260 (emphasis added). The Court went out of its way to state that it was not "concerned with exertions of state sovereignty over *non-Indians* who undertake activity on Indian reservations." *Id.* (emphasis added). Indeed, the Court noted that actions by Indians against non-Indians in state courts have been sanctioned, that the *Williams v. Lee* infringement test applies to "situations involving non-Indians," and that "[t]he problem posed by this case is completely different . . . . [s]ince appellant is an Indian and since her income is derived wholly from reservation sources. . . ." *Id.* at 171, 179, 93 S.Ct. at 1262, 1266.

¶ 6 That the *McClanahan* bar to the assertion of state jurisdiction applied to Indians was acknowledged in *Francisco*. We noted that in *McClanahan* the Court found that "the ability of Arizona to impose an income tax on *Indians*" was preempted. *Francisco*, 113 Ariz. at 429, 556 P.2d at 3 (emphasis added). We applied preemption in *Francisco* so "the Executive Order would preclude the extension of state law to *Indians* on the reservation, including the laws which effectuate the authority in the Sheriff to serve process." *Id.* at 430, 556 P.2d at 4 (emphasis added).

¶ 7 The dissent cites a student's law review note that suggests that the reservation may be out-of-state for service of process purposes. *See post*, at ¶ 22. But the argument was limited to "the extension of state law to reservation *Indians*," not to non-Indians. Note, *Service of Process on Indian Reservations: A Return to Pennoyer v. Neff*, 18 Ariz. L.Rev. 741, 750 (1976) (emphasis added). Indeed, the note concludes by criticizing *Francisco* for not holding that the reservation was out-of-state as to Indians. *Id.* at 756.

¶ 8 Nor does the dissent's reference to Public Law 280, codified at 25 U.S.C. § 1322, advance its argument. *See post*, at ¶ 22. Public Law 280 has nothing to do with the state's assertion of power over a non-Indian. Public Law 280 is "a method whereby States may assume jurisdiction over reservation *Indians*." *McClanahan*, 411 U.S. at 177, 93 S.Ct. at 1265 (emphasis added). Arizona does not need Public Law 280 to extend its

laws to non-Indians within the boundaries of a reservation.

¶ 9 The reference to Professor Laurence's piece is no more helpful to the dissent's position. *See post*, at ¶ 22. Professor Laurence's entire article was addressed to service of state process on an Indian on a reservation for off-reservation activity. That is why Professor Laurence referred to Public Law 280 which, as explained, has no applicability here.

¶ 10 So, too, the dissent's reliance on *Dixon v. Picopa Construction Co.*, 160 Ariz. 251, 772 P.2d 1104 (1989), is misplaced. *See post*, at ¶ 23. In *Dixon*, we said "[i]n *Francisco*, we held that a deputy sheriff had no authority to serve process on an *Indian* while the Indian is on his tribe's reservation." 160 Ariz. at 259, 772 P.2d at 1112 (emphasis added). And *Dixon*'s use of the "out-of-state" metaphor involved an attempt to serve process on an Indian for his off-reservation activities, not a non-Indian. *Id.* at 259–60, 772 P.2d at 1112–13.

¶ 11 The dissent says that *Langford v. Monteith* is not dispositive. *See post*, at ¶ 24. But under the Supremacy Clause, *Langford v. Monteith* is "the supreme law of the land; and the judges in every state shall be bound thereby." U.S. Const. art. VI; *see, e.g., Arizona Dep't of Revenue v. Blaze Constr. Co.*, 526 U.S. 32, ——, 119 S.Ct. 957, 960, 143 L.Ed.2d 27 (1999) ("We have never employed this balancing test in a case such as this one where a State seeks to tax a transaction between the Federal Government and its *non-Indian* private contractor." (emphasis added)), *rev'g State v. Blaze Constr. Co.*, 190 Ariz. 262, 947 P.2d 836 (App.1997).

¶ 12 The argument that *Langford* can be distinguished because of language in the Navajo treaty is foreclosed by both *McClanahan* and *Francisco*. *McClanahan* limited the effect of the treaty language "to preclude extension of state law—including state tax law—to Indians on the Navajo Reservation." 411 U.S. at 175, 93 S.Ct. at 1264. And in *Francisco* we said that similar language in Arizona's enabling act "in no way precludes the state from exercising its governmental interest by way of service of process on an Indian on a reservation." 113 Ariz. at 430,

556 P.2d at 4. Indeed, we reaffirmed the holding of *Porter v. Hall*, 34 Ariz. 308, 321, 271 P. 411, 415 (1928), that our enabling act disclaimed "only the state's proprietary interest in Indian lands and not its governmental interest," *id.*, and that "all Indian reservations in Arizona are within the political and governmental, as well as geographical, boundaries of the state." *Id.* (quoting *Porter*, 34 Ariz. at 321, 271 P. at 415).

¶ 13 The expansive approach advanced by the dissent fails to acknowledge that the reservation is within Arizona—not outside it. Members of the tribe who reside on that part of the reservation in Arizona are citizens of Arizona, not New Mexico or Utah.

¶ 14 The dissent next suggests that the state could have used Rule 4(c) of the Navajo Rules of Civil Procedure, to serve process within the boundaries of the reservation. *See post*, at ¶ 25. But that rule applies only to proceedings in the Navajo tribal courts. Proceedings in the Superior Court of Arizona are governed by the Arizona Rules of Civil Procedure.

¶ 15 Finally, the dissent quotes Cohen's *Handbook of Federal Indian Law* to suggest that state service "generates needless friction with the tribes and is poor policy." *Post*, at ¶ 27. But the Cohen quotation refers to service by a sheriff in an action in which "a state court has subject matter jurisdiction over a claim against an *Indian*." Felix S. Cohen, *Handbook of Federal Indian Law* 361 (1982 ed.)(emphasis added). Service on an Indian within the boundaries of a reservation is one thing; service on a non-Indian is quite another. The distinction is central to federal Indian law.

¶ 16 We decided the question of comity against Zaman's position in our first opinion. *Zaman*, 190 Ariz. at 212–13, 946 P.2d at 463–64. We explained why state court jurisdiction was certain and tribal court jurisdiction was uncertain at best. Comity is a doctrine that could have been considered if the tribal court had subject matter jurisdiction. But, absent an intergovernmental agreement of some kind, service of state court process by a tribal police officer would likely violate state law. In our first *Zaman* opinion, we said

"we believe it would be unwise to hold that the state court should refrain from exercising certain state court jurisdiction in favor of uncertain tribal court jurisdiction." *Id.* at 213, 946 P.2d at 464. The same is true of service of process. State service of process was valid here. This case affords us no opportunity to explore the limits of comity in other settings.

¶ 17 It is plain, therefore, that service of process by the sheriff on a non-Indian was both lawful and effective to allow the superior court to exercise *in personam* jurisdiction over Zaman.[1] We vacate the opinion of the court of appeals. Having resolved all issues raised on appeal, we affirm the judgment of the superior court.

CONCURRING: RUTH V. McGREGOR, Justice.

JONES, Vice Chief Justice, specially concurring.

¶ 18 I concur fully in the court's legal rationale and in the conclusion reached in today's opinion. I perceive value, however, in mentioning a further point.

¶ 19 It is not necessary in every case that civil litigants employ the county sheriff to serve process on non-Indians on tribal lands, though such service is legally valid under the Arizona Rules of Civil Procedure. The Rules provide alternative means by which to accomplish service without the need to send the sheriff or his deputies onto the reservation. These include service by private process server pursuant to Rules 4(d) and (e), or the issuance of notice by mail or other reliable means of notice and the procurement of a waiver of service under Rule 4.1(c). In the interest of the state's relationship with the tribes, litigants are encouraged to use such alternative methods whenever and wherever reasonably feasible in order to avoid the unnecessary presence of county law enforcement officers in Indian country and the potential for conflict which may arise from such presence. As a courtesy, the tribes deserve the cooperation of the state in these civil matters.

FELDMAN, J., dissenting.

¶ 20 I respectfully dissent. There is some question about a state officer's authority to serve process on Indian reservations, but even if an Arizona sheriff has the power to serve process on Indian reservations, respect for the Navajo Nation and principles of comity suggest that we refrain from using it. Service of process can easily be accomplished under our long-arm rules, thus complying with both Arizona and Navajo law.

**A. State authority**

¶ 21 In *Francisco v. State*, we said Arizona had "no authority to extend the application of its laws to an Indian Reservation." 113 Ariz. 427, 431, 556 P.2d 1, 5 (1976). Consequently, we held that a state officer lacked power to serve an Indian residing in Indian country unless the process server complied with tribal law. *Id.* The present case has one important difference: the defendant is a non-Indian residing on the reservation. But our rationale in *Francisco*, as the court of appeals correctly noted, extends to non-Indians located on a reservation. *State v. Zaman*, 261 Ariz. Adv. Rep. 28, 1998 WL 25559, *1 (App.1998).

¶ 22 *Francisco* relied on *McClanahan v. State Tax Commission*, in which the United States Supreme Court found that the Navajo treaty granted the Navajos exclusive sovereignty over their lands. 411 U.S. 164, 174–75, 93 S.Ct. 1257, 1263–64, 36 L.Ed.2d 129 (1973). Thus, "state authority within the reservation is preempted, and the reservation may be out-of-state for service of process purposes." Note, *Service of Process on Indian Reservations: A Return to Pennoyer v. Neff*, 18 Ariz. L.Rev. 741, 750 (1976) (discussing *Francisco* ). Moreover, Arizona has failed to adopt Public Law 280,[1] which would

---

1. Having concluded that service of process was defective, the court of appeals said that it did not have to reach Zaman's separate argument that he had insufficient contacts with Arizona to allow Arizona to assert *in personam* jurisdiction over him. We have examined the briefs and conclude that this argument has insufficient merit to warrant discussion. To the extent that it has not already been resolved by our first opinion in this case, we summarily reject it.

1. Act of Aug. 15, 1953, ch. 505, 67 Stat. 588, currently codified at 25 U.S.C. §§ 1321–26.

have allowed Arizona to assume civil and criminal jurisdiction over Indian country. *See* Robert Laurence, *Service of Process and Execution of Judgment on Indian Reservations,* 10 Am. Ind. L.Rev. 257, 259 (1982).

¶ 23 *Dixon v. Picopa Constr. Co.* further supports the court of appeals' conclusion that a state officer is without authority to serve process in Indian country. 160 Ariz. 251, 259–60, 772 P.2d 1104, 1112–13 (1989). *Dixon* treated Indian reservations as out-of-state for service of process purposes. *Id.* at 259, 772 P.2d at 1112. Again, the defendant was an Indian while Zaman is not, but in *Dixon* we explained our holding in *Francisco* with the following words: "We merely held that a state officer could not officially serve process on an Indian reservation just as that state officer could not officially serve process in California or New Mexico." *Id.* at 260, 772 P.2d at 1113; *see also* 2 Charles Marshall Smith, *Arizona Practice—Civil Trial Practice* § 226 (Supp.1998) ("[L]ong-arm provisions for service of process apply to Indian reservations located within Arizona."). Treating Indian reservations as out-of-state for service of process purposes "does not unreasonably infringe on Indian sovereignty any more than out-of-state, long-arm service unreasonably violates our sister states' sovereignty." *Dixon,* 160 Ariz. at 260, 772 P.2d at 1113.

¶ 24 The majority cites *Langford v. Monteith* as having long ago decided the issue. 102 U.S. 145, 147, 26 L.Ed. 53 (1880). *Langford,* however, was decided when a defendant could only be served within a state's territorial limits. *See Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). Those days are long gone, and thus the inquiry has changed. Today, when Arizona has *in personam* jurisdiction, it has the power to serve a defendant whether that defendant resides within or without the state. *See* Rules 4.1 and 4.2, Ariz.R.Civ.P. But this does not mean that it may send a sheriff to another sovereign's territory to make personal service with process in hand and gun on hip. In any event, *Langford* is not dispositive for yet another reason. The treaty between the Nez Perce Indians and Idaho, which was relevant in *Langford,* did *not* contain a clause excluding the tribal lands from territorial or state jurisdiction. 102 U.S. at 147. Thus, the Court held that the Indian lands were "part of the Territory and subject to its jurisdiction, so that process may run there." *Id.* Conversely, the Supreme Court said in *McClanahan* that the Navajo treaty granted the Navajos exclusive sovereignty over their lands. 411 U.S. at 174–75, 93 S.Ct. at 1263–64. Therefore, *Langford* may not be controlling. But we need not find out. The principles of comity urge that we respect the Navajo Nation's laws when serving process on its residents.

**B. Comity—respect for Navajo Nation**

¶ 25 Arizona rules provide ample means for long-arm service without invading the territorial integrity of another sovereign. *See* Rule 4.2, Ariz.R.Civ.P.; *see also Dixon,* 160 Ariz. at 259, 772 P.2d at 1112 ("We ... hold that the 'long-arm' provisions of Rule 4 apply to Indian reservations located within Arizona."). Process may be served by certified mail or by a person authorized under Navajo law. *See* Rule 4.2(b) & (c), Ariz.R.Civ.P. ("Service of process may be made outside the state ... by a person authorized to serve process under the law of the state where such service is made.").[2] The Navajo Rules of Civil Procedure allow service of process to be made by the following:

1. By Navajo police officers.

2. By persons appointed by the presiding judge of a Navajo court.

3. By private process servers registered with the Navajo Nation.

*See* Rule 4(c), Navajo Rules of Civil Procedure. Thus, the deputy sheriff who made

---

Adopting the law would have required Arizona to appropriately amend its statutes or constitution, and now requires the consent of the Indian tribe. *See Francisco,* 113 Ariz. at 430, 556 P.2d at 4.

**2.** In *Tracy v. Superior Court,* we stated that "the principles of comity militate in favor of interpreting the word territory to include the Navajo Nation." 168 Ariz. 23, 34, 810 P.2d 1030, 1041 (1991). The same is true here. The word "state" can and certainly should be interpreted to include the Navajo Nation, whose treaty with the United States gives it territorial sovereignty within the geographical boundaries of our state.

service in this case could have asked for appointment to serve process within the territorial limits of the Navajo Nation. Process could also have been served by a tribal officer, a registered private process server, or by certified mail under Arizona's long-arm statute. *See id.*; *see also* Rule 4.2, Ariz. R.Civ.P.

¶ 26 As the majority points out many times, Zaman is a *non-Indian* and the authorities cited deal with attempts to extend state jurisdiction over Indians. Obviously, the *Indian / non-Indian* distinction is critical for jurisdictional purposes as well as in other substantive areas of Indian law. The issue here, however, is not jurisdiction over this defendant—that was settled in *Zaman I* in which I concurred—but instead, whether we should recognize an Arizona sheriff's service of process in Indian territory. In that context, the critical factor is not the status of the person to be served, for I do not suggest Arizona may not exercise personal jurisdiction over this *non-Indian* defendant. I only suggest that it does not automatically follow that because the state has in personam jurisdiction over the defendant, it also has authority to send its officers into the reservation to personally serve the defendant. Recognition of state official personal service in Navajo territory does not turn only on the state's relationship with the litigant or even its power, but also on its relationship with the Navajo Nation.

¶ 27 In the final analysis, therefore, we need not solve the question of whether principles of Indian sovereignty prohibit a state officer from intruding on Navajo land to make personal service. Even if I were to assume the majority is correct, good judgment and respect dictate an easier and better resolution. A state sheriff's service on an Indian in Indian land "generates needless friction with the tribes and is a poor policy." Rennard Strickland et al., *Felix S. Cohen's*

*Handbook of Federal Indian Law* 361 (1982 ed.). Contrary to the majority's assertion, this principle is equally applicable to service on non-Indians.[3] Under the principles of comity, due respect for Navajo tribal integrity and sovereignty should require us to recognize the Navajo Nation's laws, just as we would the laws of other jurisdictions. Our state officers would have no authority to serve process in Liechtenstein, Lithuania, or Luxembourg. Although the Navajo Nation is not a foreign country and is partly within the boundaries of our state,[4] we should treat it with the same courtesy and respect.

¶ 28 The majority opinion addresses itself only to the question of the state's power and lectures the dissenters for their supposed failure to appreciate that the prohibition of state official service on the reservation applies only to Indians. But the majority misses our primary point: even if Arizona had the power to send its sheriff on the reservation to personally serve Zaman, comity dictates that it may—and should—refrain from using that power. Instead, service should be made in accordance with Arizona law and Navajo law, thus showing respect for tribal sovereignty. That is the main point of this dissent and, with due deference, I believe it is the point that the majority should not ignore.

¶ 29 One hopes that the days are gone when the sheriff's posse could enter Navajo lands, disregarding the laws and customs of the Navajo people. Even if, as the majority contends, the constitution permits us this power, it does not require us to exercise it. As a matter of state law we could and should show our respect for Navajo sovereignty.

CONCURRING: THOMAS A. ZLAKET, Chief Justice.

---

3. If a state court has subject matter jurisdiction over a claim against an Indian, service in Indian country by either tribal police or a private server should be valid. "Official" service by a sheriff certainly violates the spirit of state service schemes, which confines such service to a state's territorial authority. Such service also generates needless friction with the tribes and is a poor

policy. But whether such service is actually preempted by the federal protection of tribal self-government is questionable. Strickland, *supra* at 361.

4. The Navajo Nation encompasses portions of Arizona, New Mexico, and Utah.