118 P.3d 1103

Maria G. ASTORGA, Dorothy Quiyo, Isabell Jackson, Emery Jackson, Raymond Jackson, Andy Jackson, and Shirley Brown, Petitioners,

v.

The Honorable Thomas L. WING, Judge of the Superior Court of the State of Arizona, in and for the County of Navajo, Respondent Judge,

Royce Greer and Rhonda Greer, husband and wife, d/b/a Greer's Scott Mortuary, Real Parties in Interest.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 30, 2005.
Review Denied March 14, 2006.

Aspey, Watkins & Diesel, P.L.L.C. by Frederick M. Aspey, Daniel T. Benchoff, Flagstaff, Attorneys for Petitioners.

The Ledbetter Law Firm, P.L.C. by James E. Ledbetter, Brett R. Rigg, Cottonwood, Attorneys for Real Parties in Interest.

## OPINION

SNOW, Judge.

¶1 Petitioners, who are plaintiffs in the underlying action, bring this special action challenging the superior court's denial of

their motion to stay. Petitioners requested the superior court stay proceedings in the state court pending a determination by a Navajo Nation court as to whether it had jurisdiction over a similar action filed by plaintiffs in that court. For the following reasons, we accept jurisdiction, but deny relief.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Real Parties in Interest Royce and Rhonda Greer own and operate Greer's Scott Mortuary in Winslow, Arizona. Pursuant to an agreement with the Navajo Nation Division of Social Services the mortuary provided burial and funeral services to indigent members of the Navajo Nation. Royce and Rhonda Greer are residents of Navajo County, Arizona, but are not members of the Navajo Nation.

¶ 3 The Petitioners, are members of the Navajo Nation. Their mother, Helen Jackson, was also a member of the Navajo Nation, but Ms. Jackson was living in Phoenix, Arizona when she passed away on June 29, 2001. Petitioners contacted the mortuary in Winslow to provide burial and funeral services for Ms. Jackson, and they delivered a "tote" bag to the mortuary containing Ms. Jackson's clothing and jewelry. There is a disagreement between the parties as to what, if any, instruction was given to the mortuary regarding the items in the bag and whether Ms. Jackson was to be clothed in those items at the time of her burial. The body was prepared in Winslow.

¶ 4 At the open casket viewing and funeral service, held on the Hopi Reservation, Ms. Jackson had not been dressed in the clothing or the jewelry provided to the mortuary. Instead, the Greers had placed the tote bag containing the items of clothing and jewelry directly in the casket. Ms. Jackson was buried on the Navajo Reservation.

¶ 5 On August 27, 2001, Petitioner Maria Astorga filed a complaint against the mortuary with the Arizona State Board of Funeral Directors and Embalmers alleging that the Greers had failed to dress Ms. Jackson according to instructions and according to Navajo tradition and custom.[1] The complaint further alleged that "the casket appeared soiled, nails showing with the bottom of the casket falling apart." After taking testimony and reviewing the evidence presented, the Board found no funeral law violations.[2]

¶ 6 On June 19, 2003, Petitioners filed a complaint in the Navajo Nation District Court, Judicial District of Window Rock, alleging wrongful burial and intentional infliction of emotional distress. The complaint also alleged "Claims arising from violations of Navajo Common Law, Custom, Tradition, and/or the Fundamental Laws of the Diné."[3]

¶ 7 On June 30, 2003, Petitioners filed a parallel complaint in the Superior Court of Navajo County alleging that "the District Court of the Navajo Nation has jurisdiction over this action, and venue is proper in the Judicial District of Window Rock." However, they added "[i]f it is determined [the Navajo Nation] does not have jurisdiction, it is alternatively alleged that the Superior Court of the State of Arizona has jurisdiction and that venue is proper in Navajo County." Together with the complaint, Petitioners filed a Motion for Stay of Proceedings "pending a determination that the Navajo Nation District Court has jurisdiction over the above-named Defendants." Petitioners argued that they were required to file the complaint in the superior court to satisfy the two year statute of limitations on their claims but that a stay of that litigation should be granted pending a determination that the Navajo Nation court has jurisdiction over the Greers.

---

1. Petitioners also contacted law enforcement alleging the theft of turquoise jewelry from the mortuary. Police interviews were conducted, but no charges were filed.

2. The Arizona Attorney General's Office conducted a review of the matter referred to the Arizona State Board of Funeral Directors and Embalmers to ensure compliance with Section XII(A)(3) of the Indigent Burial Reimbursement Agreement that the Greers had signed with the Navajo Na-

tion. As part of that agreement, the Greers were obligated to place special items furnished by the family into the casket. In a letter dated February 3, 2003, the office of the Attorney General informed the Greers that Greer's Scott Mortuary was in full compliance and the matter was closed.

3. Diné is a Navajo word meaning "the people." Webster's Third New International Dictionary (Unabridged) 635 (1993).

¶ 8 The superior court denied Petitioners' motion to stay finding that Petitioners "have not shown good cause for a stay order." Petitioners filed a motion for reconsideration that was also denied.

¶ 9 The Greers filed a motion for summary judgment and a motion to dismiss for lack of jurisdiction over parties in the Navajo Nation District Court. Petitioners then filed a cross-motion for summary judgment on the issue of jurisdiction in that same court.

¶ 10 Subsequently, Petitioners requested a stay from the superior court pending a petition for special action challenging the superior court's denial of a stay. They alleged that "where a party has instituted the same action in two courts of different sovereigns, a stay of proceedings is the preferred course of action." *Tonnemacher v. Touche Ross & Co.*, 186 Ariz. 125, 130, 920 P.2d 5, 10 (App. 1996) (finding trial court did not have discretion to dismiss claim before it that was also pending simultaneously in federal court, but did have discretion to stay the action). The superior court denied the stay, noting that neither party had provided the court with any records of the Navajo Nation court and thus "there is no basis to stay this action because of any past, present or prospective exercise of jurisdiction by a Navajo Nation court."

¶ 11 Oral argument in the Navajo Nation District Court on the motion to dismiss and the cross-motions for summary judgment was held on March 24, 2004, at which time the Navajo Nation District Court took the matter under advisement. As of the filing of this special action there has been no ruling.

¶ 12 Petitioners filed a special action in this court requesting review of the superior court's refusal to stay the litigation.

## DISCUSSION

### A. Jurisdiction

■ ¶ 13 Special action jurisdiction is appropriate when there is no equally plain, speedy, and adequate remedy by appeal. Ariz. R.P. Spec. Act. 1(a). The decision to accept jurisdiction is largely discretionary and should be reserved for "extraordinary circumstances." *State ex rel. Romley v. Fields*, 201 Ariz. 321, 323, ¶ 4, 35 P.3d 82, 84 (App.2001) (citations omitted).

■ ¶ 14 The denial of a motion to stay may be appropriately challenged by special action. *See* Ariz. Const. art. 6, §§ 5, 9; Ariz. R.P. Spec. Act. 1, 3, 4, 7; *Collins v. Truman*, 162 Ariz. 367, 369, 783 P.2d 813, 815 (App. 1989). Due to the unique issues involved in this case we accept jurisdiction.

### B. Merits

■ ¶ 15 Petitioners contend that the superior court erred in failing to grant the stay because, due to principles of comity and respect for Indian courts, "the trial court had no discretion to exercise" and was obliged to grant a stay under the circumstances presented here. We disagree.

¶ 16 Petitioners cite three federal cases, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), *Crawford v. Genuine Parts, Inc.*, 947 F.2d 1405 (9th Cir.1991), and *Wellman v. Chevron U.S.A., Inc.*, 815 F.2d 577 (9th Cir.1987), for the proposition that in cases in which there is an allegation that an Indian court has concurrent jurisdiction over a cause of action, principles of comity and respect for Indian courts require that tribal courts first be allowed to determine their own jurisdiction and exhaust it, prior to a matter being brought in either federal or state courts.

■ ¶ 17 Despite Petitioners' argument, however, the principle of exhaustion recognized by federal courts in this context does not similarly operate in Arizona state courts. *State v. Zaman*, 190 Ariz. 208, 212, 946 P.2d 459, 463 (1997) ("*LaPlante* describes an exhaustion rule. It does not purport to establish tribal court adjudicatory authority.") (Citations omitted.). Unlike Arizona state courts, federal courts retain the power to review an Indian court's exercise of jurisdiction over non-members. *See Nat'l Farmers Union Ins. v. Crow Tribe*, 471 U.S. 845, 850, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Thus, the relationship between the Navajo courts and the federal courts is (at least in part) a vertical one, governed by the rule of exhaustion. *See LaPlante*, 480 U.S. at 17, 107 S.Ct. 971; *see also Crawford*, 947 F.2d at 1407 ("The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory.") (quoting *Burlington N. R.R. Co. v.*

*Crow Tribal Council,* 940 F.2d 1239, 1245 (9th Cir.1991)).

¶ 18 The principle of exhaustion requires that when the issue of tribal court jurisdiction over non-tribal defendants is raised in a federal court proceeding, a federal court shall "dismiss or abstain from deciding cases in which concurrent jurisdiction in an Indian tribal court was asserted" until jurisdiction has been determined and tribal remedies exhausted. *Crawford,* 947 F.2d at 1407. The examination of the jurisdictional question

> should be conducted in the first instance by the [t]ribal [c]ourt itself ... [to] provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge ... [and to foster] the orderly administration of justice in federal court ... by allowing a full record to be developed in the [t]ribal [c]ourt before either the merits or any question concerning appropriate relief is addressed.

*Nat'l Farmers Union Ins.,* 471 U.S. at 856, 105 S.Ct. 2447. "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.... Until appellate review is complete ... federal courts should not intervene." *LaPlante,* 480 U.S. at 17, 107 S.Ct. 971. Thus, "the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made." *Nat'l Farmers Union Ins.,* 471 U.S. at 857, 105 S.Ct. 2447 (footnote omitted).

¶ 19 Due to this relationship with federal courts, an Indian plaintiff cannot bring a matter against a non-Indian directly in federal court when a tribal court would also have jurisdiction without first exhausting such recourse as is available in Indian courts. *See id.; Wellman,* 815 F.2d at 578–79 (Indian contractor could not bring suit directly in federal court against non-tribal entity when tribal court had concurrent jurisdiction.).

¶ 20 The principle of exhaustion, however, does not apply to the Petitioners' state court proceeding, because whether the Indian court has jurisdiction over the matter is not at issue in the state court proceeding. "Members of tribes are citizens of the United States and of the state in which they reside and thus have the right to bring actions in state court." *Zaman,* 190 Ariz. at 211, 946 P.2d at 462 (citing *McClanahan v. State Tax Comm'n,* 411 U.S. 164, 172–73, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973)). When they do so, the jurisdiction of Indian courts is not at issue because the Indian plaintiffs are not invoking their right to Indian court jurisdiction. "The Indian interests which the infringement test seeks to protect are not present when an Indian plaintiff brings an action against a non-Indian defendant in state court." *Id.* at 210, 946 P.2d at 460. This is so because "[s]tate court jurisdiction over actions brought by Indians against non-Indians does not infringe upon the rights of Indians to make their own laws and to be ruled by them." [4] *Id.* at 211, 946 P.2d at 462.

¶ 21 Thus, when an Indian plaintiff files suit in state court against a non-Indian defendant, there is no need to invoke the exhaustion requirement to protect the ability of the tribal court to determine in the first instance the facts and the law pertaining to whether it has jurisdiction. The tribal court will presumably decide the jurisdictional issue in the parallel proceeding that is before it, as the exhaustion doctrine requires. *Nat'l Farmers Union Ins.,* 471 U.S. at 857, 105 S.Ct. 2447.

¶ 22 Petitioner cites *Matsch v. Prairie Island Indian Cmty.,* 567 N.W.2d 276 (Minn. Ct.App.1997), for the proposition that when a state court and a tribal court have concurrent jurisdiction tribal court remedies must be exhausted before the state court may consider taking jurisdiction. In *Matsch,* a non-Indian plaintiff brought an action against the Prairie Island Indian Community in the tribal court and the Indian Community moved to dismiss on the grounds that it was immune

---

4. Petitioners concede the state court has jurisdiction over their dispute with the Greers, and thus they do not argue that tribal interests are so uniquely at issue that our state courts do not have jurisdiction as *LaPlante* suggests might sometimes be the case. 480 U.S. at 15, 107 S.Ct.

971 ("If state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law.").

from suit. *Id.* at 277. Following nearly a year without a tribal court ruling on the motion, the plaintiff filed her case in the state court. *Id.* Three days later, the tribal court dismissed the action, ruling that the Indian Community was immune from suit. *Id.* The Indian Community then moved to dismiss the action from the state court. *Id.* at 277–78. That motion was denied and the plaintiff appealed. *Id.* at 278. On appeal, the court reversed and remanded to the trial court for dismissal because the immunity question had already been decided by the tribal court. *Id.* at 279 ("Should [plaintiff] disagree with the tribal court's determination, she has recourse in either the tribal appellate court or in federal court.").

¶ 23 Although the plaintiffs in *Matsch* did file in the courts of separate sovereigns with concurrent jurisdiction, at the time the state court refused to dismiss the tribal court had already accepted jurisdiction and ruled on the merits of the claim. *See id.* at 277. In noting that the state court should have dismissed the action in such circumstances, the Minnesota Court of Appeals held that "[o]nce Matsch refiled her action in the tribal court and the tribal court exercised its jurisdiction, the district court was no longer at liberty to interfere with the tribal court action." *Id.* at 278. The exercise of tribal court jurisdiction referred to by the *Matsch* court, however, consisted of a decision on the merits by the tribal court. *Id.* Once a tribal court appropriately reaches a decision on the merits, Arizona law also provides that the decision be given effect. *See* Arizona Rules of Procedure for the Recognition of Tribal Court Civil Judgments, Rule 5; *Tracy v. Superior Court,* 168 Ariz. 23, 34, 810 P.2d 1030, 1041 (1991) ("Arizona courts have consistently afforded full recognition to tribal court proceedings."); *In re Lynch's Estate,* 92 Ariz. 354, 357, 377 P.2d 199, 201 (1962) (Navajo tribal court proceedings should be treated the same as court proceedings in a foreign state or country.); Canby, William C., Jr., American Indian Law

in a Nutshell, 212 (3rd ed.1998). As *Tonnemacher* makes clear, however, the exercise of concurrent jurisdiction alone by a tribal court is insufficient to divest the superior court of all discretion in determining whether to grant a stay in the parallel proceedings before it. 186 Ariz. at 128–29, 920 P.2d at 8–9.

¶ 24 As Petitioners acknowledge in their brief, when an Indian plaintiff files concurrent actions in state and tribal court, the state court is not obliged to dismiss the matter, and, it may be error for it to do so.[5] *See id.* at 130, 920 P.2d at 10. Policy considerations that prevent a court from dismissing a case when a similar case is pending in the court of a different sovereign include the possibility of:

1) unforeseen procedural problems in the other forum; 2) unreasonable delays in the other forum; 3) changes in the law; and 4) the need to provide interim relief, such as a temporary restraining order or a preliminary injunction. Because these factors may operate to deprive the litigants of justice if the case were dismissed, dismissal is not the desired outcome.

*Id.* We thus determined in *Tonnemacher* that in instances where courts of separate sovereigns have concurrent jurisdiction, the two courts may proceed simultaneously until one court reaches judgment. *Id.* at 128–29, 920 P.2d at 8–9 (citing *Penn General Cas. Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Kline v. Burke Constr. Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922)). "The first judgment has *res judicata* effect in the other proceeding." *Tonnemacher,* 186 Ariz. at 129, 920 P.2d at 9.

¶ 25 While the superior court did not have discretion to dismiss the action, it does have "the discretion to stay the action" pending a determination of the case in the other sovereign. *See id.* at 130, 920 P.2d at 10. When the superior court considers whether to grant a stay, the court should consider

1) avoiding increased costs; 2) preventing harassment by repeated suits involving the

---

**5.** Somewhat inconsistently, Petitioners, in their Reply Brief, cite *Agric. Employment Relations Bd. v. United Farm Workers of America, AFL–CIO,* 26 Ariz.App. 336, 340, 548 P.2d 429, 433 (1976), for the proposition that "where two tribunals have concurrent jurisdiction, the first acquiring jurisdiction retains it to the exclusion of the other

until the case is finally determined." However, that case and others cited therein refer to instances in which both tribunals derive their authority from the same sovereign. As discussed above, *Tonnemacher* sets forth the appropriate rule when the two tribunals are from separate sovereigns. 186 Ariz. at 128, 920 P.2d at 8.

same subject matter; 3) avoiding extra cost and burden to judicial resources; 4) avoiding piecemeal litigation, 5) avoiding unusually difficult questions of . . . law that bear upon important policy issues, and 6) avoiding conflicting judgments.

*Id.* (citations omitted). The superior court may also consider other factors in deciding whether to grant a stay. *See Zaman,* 190 Ariz. at 213, 946 P.2d at 464 (recognizing that the exercise of judicial restraint is not always appropriate when competing sovereigns may have concurrent jurisdiction).

¶ 26 In exercising its discretion in considering the stay, it is appropriate for the superior court to give some degree of deference to tribal courts that may have jurisdiction over a parallel proceeding. However, that a tribal court may have concurrent jurisdiction does not alone deprive the superior court of its discretion in determining whether a stay should be granted. While a stay may be indicated because it avoids needlessly duplicative litigation and at the same time gives the courts of the Navajo Nation an opportunity to assert jurisdiction should it be appropriate, we cannot say that the superior court abused its discretion in these circumstances.

¶ 27 Petitioners filed their complaint in both the Navajo Nation and the superior courts more than two years ago. They submitted the jurisdictional question to the Navajo Nation court after oral argument on cross-motions on March 24, 2004—more than seventeen months ago. The Navajo Nation District Court has yet to rule, and we are not aware of any time limit under which the Navajo courts are obliged to rule. Thus, the stay requested "pending a determination" by the Navajo Nation District Court of its own jurisdiction was for an indefinite period. As the superior court noted in denying the stay, "[t]he Court determines that there is no basis to stay this action because of any past, present or prospective exercise of jurisdiction by a Navajo Nation court. The court does so with awareness that the instant case will have been pending two (2) years on June 30, 2005."

¶ 28 In *Tonnemacher* we expressly noted that one of the reasons it would be error to dismiss a case in which the courts of another sovereignty have jurisdiction is the possibility of "unreasonable delays in the other forum." 186 Ariz. at 130, 920 P.2d at 10. When considering a stay in such circumstances, the superior court must consider the right of the defendants to have their case resolved in a reasonably timely manner. *See Rabe v. Cut and Curl of Plaza 75, Inc.,* 148 Ariz. 552, 553, 715 P.2d 1240, 1241 (App.1986) (The trial court should consider whether separation of causes of action will expedite and/or lessen the cost of litigation.). The superior court is also entitled to consider the time it must keep a pending but inactive case alive on its own docket.

¶ 29 While Petitioners may have a preference to have this matter heard by the Navajo Nation District Court, it was their decision to also file in the Superior Court of the State of Arizona as a "jurisdictional backstop" to ensure that they could bring their claim in some forum. They have thus created the potential for simultaneous litigation of which they now complain. The superior court acted within its discretion to deny Petitioners' motion to stay. The court noted the two year delay in the litigation of the case before it. In considering this and Petitioners' failure to seek a stay for a finite period, the Greers' right to have their case heard, and Petitioners' initiation of both pending actions, we cannot say the court abused its discretion in declining to grant Petitioners' motion for stay. *Tonnemacher,* 186 Ariz. at 130, 920 P.2d at 10.

## C. Attorneys' Fees

¶ 30 The Greers request a grant of attorneys' fees pursuant to Arizona Rule of Special Actions 4(g) and A.R.S. § 12–341.01 (2003). Because a prevailing party has yet to be determined in this action, a fee award is premature.

## CONCLUSION

¶ 31 Accordingly, we accept jurisdiction and deny relief.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JOHN C. GEMMILL, Judge.