Filed 11/6/15  Twenty-Nine Palms Enterprises v. Cadmus Construction CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| TWENTY-NINE PALMS ENTERPRISES CORPORATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CADMUS CONSTRUCTION, INC.,<br><br>Defendant and Appellant. | D067422<br><br><br>(Super. Ct. No. CIVRS914065 ) |

APPEAL from a judgment of the Superior Court of San Bernardino, Janet M. Frangie, Judge.  Reversed and remanded with directions.

Lambert & Rogers and Michael D. Rogers for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Richard M. Freeman and Matthew S. McConnell for Plaintiff and Respondent.

Cadmus Construction, Inc. (Cadmus) entered into three contracts with Twenty-Nine Palms Enterprises Corporation (Twenty-Nine Palms), an Indian tribal corporation. Under these contracts, Cadmus was to perform certain construction services on tribal land.  During the course of Cadmus's performance under the contracts, Twenty-Nine

Palms elected to terminate the contracts. Per an arbitration provision found in each contract, Cadmus demanded arbitration and the parties proceeded to engage in discovery, heading toward the selected arbitration date.

During the course of conducting discovery, Twenty-Nine Palms learned that Cadmus was not properly licensed under the Contractors' State License Law (CSLL; Bus. & Prof. Code,[1] § 7000 et seq.) when it started work under the contracts. Twenty-Nine Palms thus claimed Cadmus had to disgorge the money it had been paid under each of the contracts. Further, Twenty-Nine Palms argued that because Cadmus was not a properly licensed contractor, each of three contracts was illegal and void. Therefore, arbitration could not proceed.

The parties disagreed regarding whether the arbitrator could determine if the subject contracts were illegal. After discussing the issue, Twenty-Nine Palms and Cadmus agreed to stay the arbitration and submit the legality of the contracts issue to San Bernardino Superior Court to avoid wasting additional time and resources in arbitration. To this end, Twenty-Nine Palms filed a complaint in superior court challenging the validity of the three contracts while alleging that Cadmus had to disgorge its profits under section 7031, subdivision (b) because it was not a properly licensed contractor when it began work under the contracts.

---

[1]     Statutory references are to the Business and Professions Code unless otherwise specified.

2

In response to the complaint, Cadmus filed a motion to compel arbitration, which the court denied, finding that the parties had stipulated to allow the court to determine whether Cadmus was properly licensed and if the contracts were illegal. After some procedural maneuvering by Cadmus, Twenty-Nine Palms successfully moved for summary judgment. In granting the motion, the superior court concluded that it was bound by the holding of *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435 (*Twenty-Nine Palms Enterprises*), and thus, Cadmus could not argue that section 7031 was not applicable. The court ordered Cadmus to disgorge the money Twenty-Nine Palms had paid it under the contracts and found that those contracts were illegal. Accordingly, the court determined that the arbitration could not proceed.

Cadmus appeals the judgment, contending that the court erred in refusing to refer the dispute back to arbitration, section 7031, subdivision (b) was not applicable under the circumstances here, and a triable issue of material fact exists as to whether it performed any work while unlicensed. Twenty-Nine Palms responds that the section 7031 issue was already determined in *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435 and Cadmus cannot now argue section 7031 did not apply. In addition, Twenty-Nine Palms maintains it was undisputed that Cadmus performed and was paid for work prior to being licensed, and therefore, it had to disgorge the money it was paid. Finally, Twenty-Nine Palms asserts all three of the contracts were illegal because Cadmus was not properly licensed when it began work under those contracts.

After receiving briefs in this case, we requested supplemental briefing to address the issue whether California could regulate the licensing requirements of contractors

3

performing work under a contract with a tribal entity that calls for work to be completed on tribal land.

After reviewing the supplemental briefs, we determine that California may not regulate contractors working on tribal land through California law or Public Law 280 (Pub.L. No. 83-280 (Aug. 15, 1953) 67 Stat. 589). Moreover, we conclude that section 4 of Public Law 280 codified at title 28 United States Code section 1360 does not allow Twenty-Nine Palms to otherwise sue under a California law that does not apply on tribal land. However, here, the parties to the contracts agreed to be governed by California law. As such, section 7031, subdivision (b) can apply because the parties consented to its application in their contracts.

We further determine that the three subject contracts are not illegal because section 7031 does not apply outside of the contracts themselves. Accordingly, the court erred in not referring the matter back to arbitration to resolve the remaining disputes. We therefore reverse the judgment and remand the matter to the superior court with directions to refer the matter back to arbitration.

FACTUAL AND PROCEDURAL BACKGROUND

Twenty-Nine Palms is a tribal corporation duly chartered under the provisions of title 25 United States Code section 477 and wholly owned and controlled by the Twenty-Nine Palms Band of Mission Indians, a federally recognized tribe residing near Coachella, California. Twenty-Nine Palms owns and operates the Spotlight 29 Casino (Casino), located at 46-200 Harrison Place, Coachella, California.

4

Cadmus was incorporated on February 8, 2008. Cadmus operated as a general contractor. Cadmus applied for a California State Contractor's license on March 4, 2008. It received a contractor's license on April 22, 2008. Paul Bardos is the sole owner, officer, and director of Cadmus.

On February 5, 2008, Cadmus Construction Corporation submitted a proposal to Twenty-Nine Palms to take over the recently vacated general contractor job on the Casino addition project as well as a variety of other pending and yet to be determined projects. Cadmus thereafter engaged in detailed negotiations with Twenty-Nine Palms and eventually entered into the following three contracts: (1) a bathroom remodel contract, entered into on March 10, 2008 (Bathroom Contract); (2) new chiller and cogeneration plant building shell contract entered into on March 10, 2008 (Chiller Contract); and the Casino addition project Phase I contract, entered into on April 21, 2008 (Casino Addition Contract) (Bathroom Contract, Chiller Contract, and Casino Addition Contract collectively referred to as Construction Contracts).

Bardos signed each of the Construction Contracts on behalf of Cadmus as its president. Article 13.1.1 of the general conditions for all three Construction Contracts stated that the "Contract shall be governed by the law of the State of California." Each contract also contained an arbitration provision requiring the parties to arbitrate any disputes "arising out of or related to" the work to be performed under the Construction Contracts.

Cadmus performed work under each of the Construction Contracts, and Twenty-Nine Palms paid Cadmus a total of $1,604,952.32 for its work. Twenty-Nine Palms,

5

however, terminated all three of the Construction Contracts before all work was completed.

On October 9, 2008, Cadmus filed a demand for arbitration under each of the Construction Contracts, alleging that Twenty-Nine Palms breached the contracts by wrongfully terminating the contracts and not paying all money owed. In all, Cadmus alleged several causes of action, including breach of contract, conspiracy to interfere with prospective economic advantage, misappropriation of trade secrets, unfair competition, unfair business practices, accounting, and declaratory relief. Cadmus sought general damages, treble damages, and punitive damages.

Twenty-Nine Palms answered the arbitration demand on November 10, 2008, listing 29 affirmative defenses, and seeking relief against Cadmus for, among other claims, breach of contract, fraud in the inducement, and unfair business practices. At that time, Twenty-Nine Palms did not challenge Cadmus's right to arbitrate the dispute.

The parties selected an arbitrator and proceeded to engage in discovery over the next several months. In addition to written discovery, the parties took numerous depositions. After proceeding toward arbitration for over a year, Twenty-Nine Palms believed it had discovered that Cadmus was not properly licensed at all times it performed work under the Construction Contracts. The parties met and conferred regarding the status of Cadmus's license and eventually submitted a stipulation to stay the arbitration (Stipulation). The Stipulation stated in relevant part:

> "WHEREAS, the parties remain engaged in substantial ongoing discovery;

6

"WHEREAS, [Twenty-Nine Palms] asserts that recent developments in the case have raised issues regarding the contractor's license of Cadmus and whether Cadmus was properly licensed at all times on the three construction projects at issue;

"WHEREAS, Cadmus disputes [Twenty-Nine Palms's] contentions regarding its contractor's license;

"WHEREAS, the parties are in disagreement as to whether the California Supreme Court's decision in *Loving & Evans v. Blick*, 33 Cal.2d 603 (1949) mandates that a California court rather than an arbitrator decide the licensing issue;

"WHEREAS, Cadmus has submitted these new allegations regarding its contractor's license to its insurance carrier;

"WHEREAS, the parties have agreed that [Twenty-Nine Palms] shall submit this dispute to a California court;

"WHEREAS, the parties have agreed that the licensing dispute and Cadmus' insurance claim need to be resolved before the arbitration of this matter in order to potentially avoid wasting substantial time and money;"

On December 10, 2009, 14 months after Cadmus demanded arbitration, the arbitrator signed the Stipulation. Twenty-Nine Palms filed a complaint in San Bernardino Superior Court 18 days later. The complaint alleged Cadmus "performed work on the Construction Contracts prior to receiving a contractor's license on April 22, 2008." The complaint acknowledged that the parties were in the process of arbitrating a dispute under the Construction Contracts, but that Twenty-Nine Palms believed the arbitrator could not decide the "licensing issue" "and instead [that issue] needed to be decided by a Superior Court judge."

Twenty-Nine Palms alleged in the complaint that San Bernardino Superior Court had jurisdiction to hear the case under section 7031 generally, but references throughout

7

the complaint make it clear it was seeking relief under section 7031, subdivision (b).[2]

The complaint included four causes of action. The first three were for violations of section 7031 because Cadmus was not a properly licensed contractor under section 7026 prior to entering into any of the Construction Contracts or beginning to perform work under those contracts. The final cause of action was for declaratory relief based on the following controversies, whether (1) Cadmus was licensed by the California State Contractors' License Board at all times relevant to the Construction Contracts; (2) the Construction Contracts were illegal based on Cadmus's lack of license; (3) the entire arbitration was unenforceable because it was based on illegal contracts; (4) Cadmus was barred from pursuing all of its claims against Twenty-Nine Palms in arbitration; and (5) Twenty-Nine Palms was entitled to disgorgement from Cadmus.

Instead of answering the complaint, Cadmus filed a motion to compel arbitration. In its motion, Cadmus did not address the Stipulation in detail, but argued that each of the Construction Contracts contained an arbitration clause that required any disputes under those contracts to be arbitrated, including any claim as to the legality of those contracts. Twenty-Nine Palms opposed the motion, emphasizing that the parties signed the Stipulation to allow the superior court to resolve the question about whether Cadmus was properly licensed. Twenty-Nine Palms further asserted that the court must determine if the Construction Contracts were illegal because Cadmus was not licensed while

_____

[2]     Section 7031, subdivision (b) states: "Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

8

performing under the contracts. Twenty-Nine Palms reasoned that if the Construction Contracts were illegal then an enforceable arbitration provision would not exist and Cadmus could not seek relief in arbitration.

During oral argument on the motion to compel arbitration, Cadmus's counsel argued that arbitration was the proper forum for the dispute to be resolved. Twenty-Nine Palms's counsel emphasized that the issue raised in the complaint was the illegality of the Constructions Contracts: "And as far as the scope of this particular action, it is purely to decide a legal issue dealing with the legality of the underlying contract, which if, indeed, the contract is illegal the entre arbitration is itself unenforceable."

The superior court agreed with Twenty-Nine Palms noting "the plain meaning of the stipulation is that the parties agreed to have this Court resolve the licensing dispute and Cadmus' insurance claim before the arbitration in order to avoid wasting substantial time and money in the arbitration proceeding." The court therefore denied the petition to compel arbitration.

Cadmus subsequently answered the complaint. The answer included 16 affirmative defenses, including two based on tribal sovereign immunity.

Twenty-Nine Palms then filed a motion for summary judgment. The motion focused on the claim that Cadmus violated section 7031, subdivision (b) because it was not properly licensed when it performed work under the Construction Contracts. Twenty-Nine Palms also maintained that the Construction Contracts were illegal because Cadmus was not a properly licensed contractor and asked the court to order Cadmus to disgorge the money Twenty-Nine Palms had paid it.

9

Rather than file an opposition, Cadmus filed for Chapter 11 bankruptcy, and filed a new lawsuit in federal court against Twenty-Nine Palms. The federal lawsuit sought a judicial declaration that the San Bernardino Superior Court lacked jurisdiction to hear the instant matter because Public Law 280 does not permit California to enforce its contractors' licensing law with respect to construction contracts for improvements on trial land.

Cadmus subsequently removed the instant matter to bankruptcy court, initiating an adversary proceeding against Twenty-Nine Palms, asking the bankruptcy court to decide the Public Law 280 issue. The bankruptcy court ultimately denied Cadmus's request, remanding the subject adversary proceeding to the San Bernardino Superior Court. The federal court then dismissed the federal action Cadmus had filed against Twenty-Nine Palms.

With the matter remanded to the San Bernardino Superior Court, Twenty-Nine Palms filed an amended notice of its motion for summary judgment. Cadmus opposed the motion, contending, among other things, that "[b]ecause of [Twenty-Nine Palms's] tribal sovereignty, the California Contractors' State License Law does not apply to the contracts and construction at issue here."

At the time of oral argument on the motion for summary judgment, an appeal was pending regarding the San Bernardino Superior Court's grant of summary judgment in favor of Twenty-Nine Palms and against Bardos doing business as Cadmus Construction Co. (the Cadmus Construction Action). The Cadmus Construction Action involved the

10

same general issue of a nonlicensed contractor performing construction on tribal lands.[3] In that case, the superior court granted summary judgment in favor of Twenty-Nine Palms and ordered disgorgement of all money paid by Twenty-Nine Palms to Cadmus Construction. One of Cadmus Construction's defenses was that tribal sovereign immunity prevented the application of the CSLL on tribal lands, and thus, Cadmus Construction was not legally required to have a contractor's license.

During oral argument on the motion for summary judgment in the instant matter, the superior court questioned whether given the similarity of the parties and issues in the Cadmus Construction Action, it would be prudent to stay a decision on the summary judgment motion until the resolution of the Cadmus Construction appeal. The court ordered the parties to brief whether a stay should be issued.

Cadmus argued against a stay while Twenty-Nine Palms argued in favor of one. The superior court agreed with Twenty-Nine Palms and ordered that all further proceedings in the matter would be stayed pending the Court of Appeal's opinion in the Cadmus Construction Action. The superior court later denied Cadmus's motion for reconsideration of the order granting a stay.

In late 2012, the Second Division of the Fourth Appellate District issued its opinion on the appeal following Twenty-Nine Palms's successful motion for summary judgment in the Cadmus Construction Action. In *Twenty-Nine Palms Enterprises, supra*, 210 Cal.App.4th 1435, the Second Division affirmed summary judgment in favor of

---

3    Cadmus Construction was a sole proprietorship, owned by Bardos. Bardos also is the sole owner of Cadmus.

11

Twenty-Nine Palms. (*Id.* at p. 1437.) The court explained: "Cadmus [Construction] is asserting the tribe's sovereign immunity to prevent the tribe from pursing an action against him in state court. Cadmus [Construction] cannot do this -- the sovereign immunity defense is reserved for the tribe and tribal entities." (*Id.* at p. 1446.)

With the sovereign immunity defense issue ostensibly resolved, the superior court lifted the stay and proceeded with Twenty-Nine Palms's motion for summary judgment. Based on *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435, the court ruled that Cadmus could no longer argue section 7031 did not apply to the Construction Contracts and to work performed on tribal land. The court then determined that there were no material facts in dispute and Cadmus was not properly licensed under California law during all time it performed work under the Construction Contracts.

The court entered judgment in the instant matter, requiring Cadmus to disgorge $1,604,952.32 and pay Twenty-Nine Palms over $500,000 in prejudgment interest. The court also made the following judicial determinations: (1) Cadmus was not a licensed contractor at all times relevant to its work under the Construction Contracts; (2) Twenty-Nine Palms is entitled to disgorgement of all monies paid to Cadmus on the Construction Contracts pursuant to section 7031, subdivision (b); (3) section 7031, subdivision (a) bars Cadmus from pursuing its claim for compensation against Twenty-Nine Palms in arbitration; and (4) the Construction Contracts are illegal and therefore Cadmus is prohibited from continuing with its arbitration against Twenty-Nine Palms.

Cadmus timely appealed. In its opening brief, Cadmus maintains the superior court erred in not sending the matter back to arbitration when it denied the motion to

12

compel arbitration. It also asserts there exists a disputed issue of material fact as to whether Cadmus ever performed under the Construction Contracts without a contractor's license. Finally, Cadmus asserts section 7031 was not applicable to the Construction Contracts and the work it performed.

In its respondent's brief, Twenty-Nine Palms contends Cadmus waived any right to appeal the order denying the petition to compel arbitration, and in any event, the stipulation evidenced the parties' intent that the superior court was to decide the "licensing issue." Additionally, Twenty-Nine Palms claims Cadmus did not prove that it was properly licensed at all times it performed under the Construction Contracts. Twenty-Nine Palms also argues that the holding of *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435 defeats Cadmus's position that section 7031 did not apply in the instant matter.

After reviewing the parties' briefs, this court determined that additional briefing was needed. As such, we asked the parties to submit letter briefs to address the following:

> "Is Business and Professions Code section 7031 (unlicensed contractor statute) enforceable in a contract between a tribal entity and a nontribal contractor that requires all work done on tribal land? In other words, can California, through Public Law 280 or otherwise, regulate the licensing requirements of contractors performing work under a contract with a tribal entity, which calls for all work to be completed on tribal land? [¶] In answering these questions, please discuss the impact of the following cases on your analysis: *Three Affiliated Tribes v. Wold Engineering* (1984) 467 U.S. 138; *State of Arizona v. Zaman* (1997) 946 P.2d 459; *California v. Cabazon Band of Mission Indians* (1987) 480 U.S. 202. Also, this court is familiar with *Twenty-Nine Palms Enterprises Corporation v. Bardos* (2012) 210 Cal.App.4th 1435 and urges the parties not to focus on the

13

defense of sovereign immunity to the exclusion of discussing the applicability of the unlicensed contractor statute as a threshold matter."

The parties each filed a supplemental letter brief.

## DISCUSSION

### I

*MOTION TO COMPEL ARBITRATION*

Cadmus first challenges the superior court's denial of its motion to compel arbitration. In considering this argument, it is important that we take into account the context in which Cadmus brought this motion. The parties had agreed to arbitrate their disputes under the Construction Contracts. They had been doing so for over a year, including engaging in extensive discovery, when Twenty-Nine Palms believed it discovered that Cadmus had not been properly licensed at all times when it performed work under the Construction Contracts. At that point, the parties disagreed about what forum was proper to consider the issue of whether Cadmus was properly licensed, and if the Construction Contracts were illegal. It appears that Twenty-Nine Palms thought the superior court must make the threshold decision regarding the legality of the contracts while Cadmus believed the arbitrator should be presented with the issue in the first instance. Ultimately, the parties entered into the Stipulation and Twenty-Nine Palms filed an action in superior court to put the issue before the court. As part of its complaint, Twenty-Nine Palms asked the court to determine whether the Construction Contracts were illegal and thus unenforceable. Twenty-Nine Palms took the position that if the

14

contracts were illegal, no valid arbitration provision existed and the parties could not complete the arbitration process they already devoted so much time to.

The court denied Cadmus's motion to compel arbitration on April 12, 2010. Cadmus filed its notice of appeal on December 31, 2013, well over three years after the order. Twenty-Nine Palms thus argues that Cadmus waived its right to appeal the order by failing to timely appeal.

We agree with Twenty-Nine Palms that generally an order denying arbitration is immediately appealable. (See *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 733, fn. 2.) However, a denial of a motion to compel arbitration of the arbitrability of an issue is not an appealable order. (*Vivid Video, Inc. v. Playboy Entertainment Group, Inc.* (2007) 147 Cal.App.4th 434, 440-443.) Here, the parties already agreed to arbitration and had been engaging in that process for well over a year. They agreed to stay the arbitration to allow the court to determine whether the Construction Contracts were illegal because Cadmus allegedly did not possess a contractor's license during its entire performance under the Construction Contracts. In other words, the parties disagreed about whether an issue was arbitrable not whether the entire dispute was subject to arbitration.

We are mindful that if the superior court agreed with Twenty-Nine Palms, ultimately it could determine that the arbitration clauses found in the Construction Contracts were unenforceable, thus impacting the validity of the stayed arbitration. However, no such determination had been made at the time Cadmus brought its motion to compel arbitration. In this sense, Cadmus's motion was premature. Twenty-Nine Palms

15

and Cadmus had just agreed to stay the arbitration and refer the "licensing issue" to the court because they disagreed regarding whether the arbitrator or the court could determine the legality of the Construction Contracts. Cadmus filed its motion in response to Twenty-Nine Palms's complaint and made only a passing reference to the Stipulation in its moving papers. The court reviewed the Stipulation and concluded "the parties agreed to have this Court resolve the licensing dispute . . . before the arbitration in order to avoid wasting substantial time and money in the arbitration proceeding. . . . [¶] The stipulation executed by the parties clearly states that the parties have agreed to submit the licensing and illegality dispute . . . to this Court for determination before the arbitration." Therefore, in denying the motion to compel arbitration, the court did not find that the dispute could not be arbitrated at all, but instead, that it would decide whether the Construction Contracts were legal before the parties proceeded with the remainder of the arbitration. With this context in mind, we determine there was not a final, appealable order, but instead, the arbitrability of a single issue had been decided. (See *Vivid Video, Inc. v. Playboy Entertainment Group, Inc.*, *supra*, 147 Cal.App.4th at pp. 440-443.) Cadmus did not forfeit its right to challenge the order denying its motion to compel arbitration. The court did not find that the arbitration could not proceed until it ruled on Twenty-Nine Palms's motion for summary judgment, over three years later. There is no dispute that Cadmus timely appealed that judgment. We thus will consider whether the court erred in not sending this matter back to arbitration within the context of the judgment following Twenty-Nine Palms's successful motion for summary judgment.

16

## II

### *MOTION FOR SUMMARY JUDGMENT*

We review summary judgment de novo. (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 767.) Here, the court's path to granting summary judgment involved four critical findings. First, it interpreted the Stipulation as the parties agreeing that the court was to decide whether the Construction Contracts were illegal based on Cadmus's status as a licensed contractor. Next, the court determined that the holding of *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435 prohibited Cadmus from arguing section 7031 did not apply to the Construction Contracts and/or the work he performed on tribal land. Then, it found that there were no disputed material facts and Cadmus was not properly licensed at all times when it performed work under the Construction Contracts. Finally, the court determined that the Construction Contracts were illegal and void; thus, the arbitration could not proceed.

### A. Stipulation

During the arbitration, the parties entered into the Stipulation to stay the arbitration and allow Twenty-Nine Palms to seek a resolution to Cadmus's licensing issue. The extent of what the Stipulation asked the court to do is contested by the parties.

We interpret a stipulation in accordance with the ordinary rules of contract interpretation. (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1252; *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341.)

"We interpret a contract so as to give effect to the mutual intention of the contracting parties at the time the contract was formed. [Citation.] We ascertain that

17

intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates.  [Citations.]  We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation.  [Citation.]  We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage.  [Citation.]  If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."  (*Service Employees Internat. Union, Local 99 v. Options—A Child Care & Human Services Agency* (2011) 200 Cal.App.4th 869, 879.)

If contractual language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy.  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

Cadmus insists that it signed the Stipulation with the limited intent only to allow the superior court to determine whether the court or the arbitrator could decide the legality of the Construction Contracts.  Put differently, Cadmus asserts that the sole purpose of the Stipulation was "to get the trial court's blessing to have the arbitrator decide the illegality issue."  We are troubled by Cadmus's interpretation of the Stipulation on two points.

First, Cadmus does not explain and we struggle to understand how the Stipulation would play out under Cadmus's suggested interpretation if the court did not rule that the arbitrator could decide the legality issue.  What if the court found that the arbitrator could not decide this issue?  Cadmus's interpretation of the Stipulation does not account for this

18

possibility whatsoever. It merely assumes that the court would decide that the arbitrator could address the legality issue. If the court ruled that the arbitrator could not decide whether the Construction Contracts were legal, what does Cadmus believe the Stipulation empowered the court to do? Cadmus does not answer this question.

Second, we find no support for Cadmus's interpretation of the Stipulation in the words of the Stipulation itself. In relevant part, the Stipulation states:

> "WHEREAS, [Twenty-Nine Palms] asserts that recent developments in the case have raised issues regarding the contractor's license of Cadmus and whether Cadmus was properly licensed at all times on the three construction projects at issue;
>
> "WHEREAS, Cadmus disputes [Twenty-Nine Palms's] contentions regarding its contractor's license;
>
> "WHEREAS, the parties are in disagreement as to whether the California Supreme Court's decision in *Loving & Evans v. Blick*, 33 Cal.2d 603 (1949) mandates that a California court rather than an arbitrator decide the licensing issue;
>
> "WHEREAS, Cadmus has submitted these new allegations regarding its contractor's license to its insurance carrier;
>
> "WHEREAS, the parties have agreed that [Twenty-Nine Palms] shall submit this dispute to a California court;
>
> "WHEREAS, the parties have agreed that the licensing dispute and Cadmus' insurance claim need to be resolved before the arbitration of this matter in order to potentially avoid wasting substantial time and money;"

The Stipulation makes clear that Twenty-Nine Palms and Cadmus dispute whether Cadmus was properly licensed while performing work under the Construction Contracts. Further, the Stipulation explains the parties "are in disagreement" whether *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving & Evans*) requires the superior court rather

19

than the arbitrator to decide the licensing issue. The Stipulation details that the parties agree that the licensing dispute needs to be resolved before arbitration continued so the parties would not waste time and money arbitrating the matter if the Construction Contracts were found to be illegal. Accordingly, the Stipulation sets forth how the issues would be addressed. The arbitration is stayed. Twenty-Nine Palms would file and serve a complaint "regarding the licensing issue." And, at a case management conference over four months later, the parties "shall determine whether to reinstate the arbitration or continue the stay." At the very least, the court would clarify whether the arbitration should continue. How it was to reach the point is not clearly explained in the Stipulation.[4]

Although the Stipulation does not define licensing dispute, it appears from a plain reading of the Stipulation that "licensing dispute" refers to the dispute between the parties regarding whether Cadmus was properly licensed. The parties, however, disagreed whether *Loving & Evans*, *supra*, 33 Cal.3d 603 required the court to resolve this issue.

---

[4] Cadmus also claims the trial court erred in sustaining Twenty-Nine Palms objection to the admission of a declaration of Thomas Slovak, former counsel to Cadmus, that was accompanied by over 70 pages of exhibits, which Cadmus filed with its reply in support of its motion to compel arbitration. Cadmus insists the declaration and exhibits only elaborated on a declaration filed in support of its original moving papers. However, Cadmus's actual motion did not mention the Stipulation in any detail whatsoever. Essentially, Cadmus made the strategic decision not to discuss the Stipulation in its motion, despite the fact that the Stipulation stayed the arbitration and allowed Twenty-Nine Palms to submit some dispute, related to the arbitration, to the superior court. Under these circumstances, we do not find the superior court abused its discretion in sustaining Twenty-Nine Palms's objection. The declaration and exhibits were prejudicial when submitted with the reply as they deprived Twenty-Nine Palms of fully and fairly challenging the newly raised arguments. (See *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316.)

20

Despite the disagreement, it appears the parties stipulated to allow the court to make some threshold determination. A closer examination of *Loving & Evans* better informs us as to the nature of the disagreement and what the Stipulation asked the superior court to do.

In *Loving & Evans*, a contractor, who was unlicensed during the entire relevant period, petitioned for arbitration seeking compensation. The owner answered, and alleged the lack of a license as an affirmative defense. The arbitrator ignored the license issue and awarded the unlicensed contractor his fees. The superior court affirmed the award and judgment was entered. Our high court reversed, stating " 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract' [citations]. . . ." (*Loving & Evans*, *supra*, 33 Cal.2d at p. 607.) "It seems clear that the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.] In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." (*Id*. at p. 610.) If the issue of the invalidity of the contract is presented to a court on a petition to confirm and/or to vacate an arbitration award, "and it appears to the court from the uncontradicted evidence that the contract is illegal, . . . the court should deny confirmation and should vacate any award granting relief under the illegal contract upon the ground that the arbitrator exceeded his powers in making such award." (*Ibid*.)

21

Thus, *Loving & Evans, supra,* 33 Cal.2d 603, "permitted judicial review of an arbitrator's ruling where a party claimed the entire contract or transaction was illegal." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32.)  Based on our review of the record, it appears that the parties disagreed when the legality determination should be made. Cadmus apparently believed the matter could first go to arbitration and then the superior court could independently review the alleged illegality of the Construction Contracts. Twenty-Nine Palms, however, wanted the issue decided prior to completing the arbitration to avoid wasting time and resources.  We agree with Twenty-Nine Palms that the parties asked the court to determine the legality of the Construction Contracts prior to proceeding with the actual arbitration.  To this end, the superior court could be required to determine whether Cadmus was properly licensed to decide the legality issue if Cadmus's status as an unlicensed contractor would make the Construction Contracts illegal in their entirety.

This interpretation is further supported by the arguments Twenty-Nine's Palms made to the superior court.  For example, during oral argument on Cadmus's motion to compel arbitration, Twenty-Nine Palms's counsel explained the purpose of the subject complaint:

> "And as far as the scope of this particular action, it is purely to decide a legal issue dealing with the legality of the underlying contract, which if, indeed, the contract is illegal the entire arbitration itself is unenforceable.  [¶]  Both sides are in complete agreement that the legality of this contract and whether Cadmus, Inc., was properly licensed must be decided by this Court.  And sending us back to arbitration to go through hundreds of thousands of dollars of time and money on an arbitration that both sides admit will wind up back here on this exact issue that has to be heard de novo, that will

22

potentially render the entire arbitration null and void, makes absolutely no sense."

The limited scope of Twenty-Nine Palms's complaint was discussed at a subsequent status conference. When the court set a case management conference after Twenty-Nine Palms's motion for summary judgment was to be heard, Cadmus's attorney expressed his concerns about the timing of the upcoming hearings: "I do have a problem with that. This case has a long history of arbitration before coming to this Court. [¶] It comes to this Court by way of a stipulation for this Court to decide one distinct issue, the legality of three subject contracts. [¶] If the Court decides in our favor, it will go back to arbitration, and it's where we believe the MSJ is more properly heard. If we don't prevail, then perhaps we go to the MSJ."

After Twenty-Nine Palms's counsel agreed that the dispute had been voluntarily submitted to arbitration, he echoed opposing counsel's view of the limited nature of the subject complaint: "Your Honor, this issue has already come up. Defendant brought a motion to compel the case back to arbitration and we briefed and you heard this issue and found that pursuant to the stipulation, this case was going forward because the point of the case and the point of the MSJ is to figure out whether these three contracts are legal or not. That's precisely what the motion for summary judgment is going to find."

Here, we agree with the superior court that the Stipulation evidences that the parties wanted the superior court to determine the legality of the Construction Contracts. Because it was Twenty-Nine Palms's position that if Cadmus was not properly licensed the entire time it performed work under the Construction Contracts, those contracts were

23

illegal and void, the Stipulation also could require the court to resolve whether Cadmus was properly licensed.

## B. Application of the CSLL

In opposing Twenty-Nine Palms's motion for summary judgment, Cadmus argued that the CSLL did not apply to the Construction Contracts because of Twenty-Nine Palms's sovereign immunity. The superior court determined that this argument was defeated by the holding of *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435. Here, Cadmus maintains that in *Twenty-Nine Palms Enterprises*, the issue of whether the CSLL applied "was not presented clearly and the case turned on an issue that was not really in dispute in the trial court." Twenty-Nine Palms counters that it is clear that Cadmus cannot use Twenty-Nine Palms's sovereign immunity as a shield against its lawsuit. As we indicated in our request for supplemental briefing, we do not believe Twenty-Nine Palms's sovereign immunity is the ultimate determining factor here. Instead, an initial question must be answered: Can California regulate the licensing requirements of contractors performing work under a contract with a tribal entity for work to be completed on tribal land. We respectfully conclude *Twenty-Nine Palms Enterprises* does not adequately answer the question presented here.

In *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435, Twenty-Nine Palms entered into a contract with Cadmus Construction to construct a temporary access road and parking lot for the Casino. (*Id.* at p. 1438.) Cadmus Construction performed the work on the tribe's land. Twenty-Nine Palms paid Cadmus Construction in full under the contract around May 2007. However, Cadmus Construction did not receive its

24

contractor's license until October 2007.  Twenty-Nine Palms brought suit to have Cadmus Construction disgorge what it was paid.  (*Ibid*.)

Twenty-Nine Palms brought a motion for summary judgment, arguing the undisputed evidence reflected that Cadmus Construction was not licensed when it performed its work at the Casino, and therefore, Cadmus Construction should be required to disgorge what it was paid under the contract.  (*Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th at p. 1438.)  Among other arguments, Cadmus Construction maintained that California's civil regulatory laws do not apply on tribal lands.  It reasoned that the superior court lacked jurisdiction to decide the issue if section 7031 was a civil regulatory statute as opposed to a criminal statute.  (*Twenty-Nine Palms Enterprises*, *supra*, at p. 1441.)

Division Two of this court succinctly rejected Cadmus Construction's argument: "Cadmus [Construction] asserts the unlicensed contractor statute (§ 7031) is not enforceable in a contract made with a tribal entity for work done on tribal land.  We disagree because Cadmus [Construction] cannot assert [Twenty-Nine Palms's] sovereign immunity." (*Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th at p. 1445.)

Relying on *Three Affiliated Tribes v. Wold Engineering* (1984) 467 U.S. 138 (*Three Tribes I*) and *State of Arizona v. Zaman* (1997) 190 Ariz. 208 (*Zaman*), Division Two concluded "that the sovereign immunity defense is reserved for the tribe and its entities.  Thus, if a tribe or a tribal entity seeks to sue a nontribal entity in state court, then the nontribal entity cannot assert sovereign immunity as a defense." (*Twenty-Nine Palms*

25

*Enterprises*, *supra*, 210 Cal.App.4th at p. 1446.)  The court went on to explain why

Cadmus Construction could not assert sovereign immunity:

> "Since the sovereign immunity defense is only available to the tribe
> and the tribal entities, the defense was not available to Cadmus
> [Construction]—a nontribal entity.  Thus, Cadmus [Construction]
> cannot rely on the defense theory that section 7031 was not
> enforceable in a contract made with a tribal entity for work done on
> tribal land, because that defense relies on principles of sovereign
> immunity.  For example, in [Cadmus Construction's] opening brief,
> it argues, '[I]t is also well established that building and zoning codes
> are not operative on Tribal property because of sovereignty
> interference. . . .'  Cadmus further argues, 'The interference with
> Indian sovereignty of licensing requirements is illustrated in this
> case:  Had Cadmus been forced to obtain a new license prior to
> commencing work, [then] the Tribe would have had to choose
> between selecting another contractor or delaying the start of
> construction. . . .'  Cadmus is asserting the tribe's sovereign
> immunity to prevent the tribe from pursuing an action against him in
> state court.  Cadmus cannot do this—the sovereign immunity
> defense is reserved for the tribe and tribal entities."  (*Ibid.*)

Division Two also was not impressed with Cadmus Construction's implicit

argument that section 7031 was not applicable on tribal land.  The court emphasized:

> "It appears Cadmus [Construction] is asserting the following theory:
> Section 7031 simply was not the law in the jurisdiction where the
> contract performance took place.  The problem with this argument is
> that it relies on principles of sovereign immunity.  Cadmus
> [Construction] is arguing a particular state law does not apply on
> tribal lands— Cadmus [Construction] does not have the authority to
> assert this defense, only the tribe or its entities may assert such a
> defense.  Cadmus [Construction] cannot raise tribal immunity simply
> because the contract was performed on tribal land— the defense of
> sovereign immunity is personal to the tribe and its entities.
> [Citations.]  Accordingly, we find Cadmus [Construction's]
> argument to be unpersuasive."  (*Twenty-Nine Palms Enterprises*,
> *supra*, 210 Cal.App.4th at p. 1446.)

Division Two's reasoning is clear that it could not consider whether the CSLL applied on tribal land because only the tribe could raise this defense. Therefore, Division Two did not analyze whether California can regulate contractors who are engaging in construction work wholly on tribal land as a starting point. According to the court, it could not reach this issue because such an argument relied on the defense of tribal sovereign immunity. We respectfully disagree with this portion of *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435, and therefore, asked the parties to submit supplemental briefs to address this issue. Of particular importance in this case, we wanted the parties to explain how Twenty-Nine Palms could sue under a California statute in state court if that statute did not apply on tribal lands.

Not surprisingly, the parties reached different conclusions. Relying primarily on *California v. Cabazon Band of Mission Indians* (1987) 480 U.S. 202 (*Cabazon*), Cadmus maintains that Public Law 280 does not grant a California superior court the "power to hear this case." Cadmus argues that the CSLL is regulatory in nature and the holding of *Cabazon* prohibits California from enforcing a regulatory statute (like § 7031) to construction work performed on tribal lands. (See *Cabazon*, *supra*, 480 U.S. at p. 209 ["[I]f the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and [Public Law] 280 does not authorize its enforcement on an Indian reservation."].)

In addition, Cadmus insists a California superior court lacks "inherent jurisdiction" to hear the instant matter. In support of its position, Cadmus argues *Three Tribes I*, *supra*, 467 U.S. 138 and the follow up case *Three Affiliated Tribes v. Wold Engineering*

27

(1986) 476 U.S. 877 (*Three Tribes II*), when read together, support its position that the superior court here lacked jurisdiction. In *Three Tribes I*, the Supreme Court held that federal law did not preclude North Dakota from exercising civil adjudicative jurisdiction over the claims of an Indian tribe suing a nonmember. (*Three Tribes I*, *supra,* at p. 150.) However, in *Three Tribes II*, *supra*, 476 U.S. 877, the Supreme Court concluded that North Dakota's attempt to condition access to its courts on the tribe's waiver of its sovereign immunity and its agreement to the application of state law to all suits to which it was a party was preempted by Public Law 280. (*Three Tribes II*, *supra*, at p. 887.) The court noted that although Public Law 280 was designed to extend the jurisdiction of the states over tribal lands and there is a strong federal interest in ensuring that all citizens have access to the courts, the North Dakota conditions constituted "a potentially severe intrusion on the Indian's ability to govern themselves according to their own laws in order to regain their access to the state courts." (*Three Tribes II*, *supra*, at p. 889.) Cadmus reads these two cases as not permitting California to force Twenty-Nine Palms to use the CSLL in the instant lawsuit. This argument misses the mark. Twenty-Nine Palms does not contend that California is forcing it to sue under the CSLL. Instead, Twenty-Nine Palms elected to bring suit under a portion of the CSLL (§ 7031) and argued that the Construction Contracts were illegal and void in their entirety because Cadmus was not properly licensed by the State of California. As such, contrary to the facts of *Three Tribes I* and *Three Tribes II*, here the superior court did not compel Twenty-Nine Palms to give up any of its sovereignty to bring suit or only allow it to bring suit under a specific state law.

28

The majority of Cadmus's supplemental brief is spent contending the superior court lacked jurisdiction to hear the instant matter. In other words, Cadmus insists that Twenty-Nine Palms could not sue it in a California superior court. Cadmus has not offered any authority to support its position. Indeed, one of the cases on which Cadmus relies undercuts its position. In *Three Tribes I*, the United States Supreme Court concluded the situation of an Indian suing a non-Indian in state court is "very different" from a non-Indian suing an Indian in state court for events occurring on tribal land. The United States Supreme Court explained, "As a general matter, tribal self-government is not impeded when a State allows an Indian to enter its courts on equal terms with other persons to seek relief against a non-Indian concerning a claim arising in Indian country." (*Three Tribes I*, *supra*, 467 U.S. at pp. 148-149.)

Further, although we explicitly asked the parties to address *Zaman, supra*, 190 Ariz. 208, Cadmus omitted any discussion of that case. In *Zaman*, a mother, who was a member of the Navajo tribe, brought an action in Arizona state court against her child's father, who was not a member of an Indian tribe. (*Id*. at p. 209.) The mother sought to have the father adjudged the child's father and ordered to pay child support. (*Ibid*.) The father argued the trial court lacked jurisdiction. The trial court found in favor of the mother, but the intermediate appellate court reversed. The intermediate court held, the trial court "lacked subject matter jurisdiction because 'state action [would] infring[e] on the right of reservation Indians to make their own laws and be ruled by them.' " (*Ibid*.)

The Arizona Supreme Court vacated the intermediate appellate court's decision. (*Zaman*, *supra*, 190 Ariz. at p. 213.) The court reasoned, "[The father], a non-Indian,

29

seeks to use a protection afforded Indians to defeat the claim of an Indian who chooses the state forum. This attempt to clothe oneself in the immunity afforded another has already been rejected by the Supreme Court." (*Id*. at p. 210.) Thus, the holding of *Zaman* contradicts Cadmus's position that the superior court did not have jurisdiction to hear the instant matter.

Simply put, *Three Tribes I*, *supra*, 467 U.S. 138 and *Zaman*, *supra*, 190 Ariz. 208 do not stand for the proposition that Twenty-Nine Palms could not bring suit in a California superior court for a dispute that arose out of three construction contracts requiring work to be done on tribal lands. To the contrary, these two cases support Twenty-Nine Palms's position that the superior court had jurisdiction to hear the instant matter. We agree. We find nothing in any of the cases cited by Cadmus in its supplemental brief that would prohibit Twenty-Nine Palms from filing its complaint in superior court.

That said, the question remains whether the CSLL applies to a contractor entering into a contract with an Indian tribe to perform work on tribal lands. The holding of *Cabazon*, *supra*, 480 U.S. 202, implies that it does not.

The issue in *Cabazon* was whether the State of California could apply its gaming regulations to tribal bingo and card games. (*Cabazon*, *supra*, 480 U.S. at p. 205.) The state regulations did not prohibit such games, but restricted them to charitable organizations and imposed limitations on the amount of prizes that could be awarded and restricted the use of profits to charitable purposes. (*Ibid*.) Recognizing that "Indian tribes retain 'attributes of sovereignty over both their members and their territory,' " the

30

court first held that Congress had not allowed the state to assume jurisdiction over gaming activities under Public Law 280 because the state's regulations relating to these forms of gaming were civil and regulatory in nature and not criminal and prohibitory. (*Cabazon*, *supra*, at pp. 207-208.) Because California allowed a substantial amount of gambling activity and even promoted gambling through its state lottery, the court concluded, "California regulates rather than prohibits gambling in general and bingo in particular." (*Id*. at p. 211.) As such, the holding in *Cabazon* implies that California law, under Public Law 280, could apply to activities on tribal land to the extent the law was "prohibitory," but did not generally apply to the extent that it was "regulatory." (*Cabazon*, *supra*, at pp. 207-210.)

Here, Cadmus argues that the CSLL is regulatory in nature. Twenty-Nine Palms maintains the civil or criminal distinction is not relevant in this matter, and therefore, does not address it. However, the California Supreme Court already answered this question: "The CSLL is a regulatory statute." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 436 (*MW Erectors*).) Nevertheless, Twenty-Nine Palms contends *Cabazon*, *supra*, 480 U.S. 202 is not instructive here because California is not seeking to enforce any of its laws against Twenty-Nine Palms. Instead, it is Twenty-Nine Palms bringing suit under California law in a California superior court against a non-Indian. Nonetheless, this scenario begs the question: If the CSLL does not apply on tribal lands in general, can a tribe seek to enforce a portion of the CSLL in state court? Twenty-Nine Palms answers this question in the affirmative for two separate reasons.

31

First, Twenty-Nine Palms maintains that it can bring suit in state court under the CSLL pursuant to section 4 of Public Law 280.  Section 4 states:

> "Each of the States listed in the following table have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State."  (28 U.S.C. § 1360, subd. (a).)

Twenty-Nine Palms contends that the statute's reference to "civil laws . . . of general application to private persons or private property" confirms that California laws (including the CSLL) apply to private legal disputes, like the one here, between a tribe and a non-Indian arising on tribal land.  However, except for quoting section 4 of Public Law 280 directly, Twenty-Nine Palms offers no authority to support its position.  This is especially troublesome when it is clear that California cannot regulate contractors operating on tribal lands.  (See *Cabazon*, *supra*, 480 U.S at pp. 207-210.)  In other words, we are concerned whether section 4 could somehow make a California law regulating licensing of contractors that California could not enforce on tribal land applicable when a tribal entity brings suit in California court against a non-Indian.

Our independent research indicates that case law interpreting section 4 of Public Law 280 is sparse.  Yet, the United States Supreme Court did address this issue in regard to an Indian resident of an Indian reservation who brought a declaratory judgment that the State of Minnesota and Itasca County could not impose a property tax on his mobile home located on land held in trust for members of his tribe.  (See *Bryan v. Itasca Cty.,*

32

*Minnesota* (1976) 426 U.S. 373, 375 (*Bryan*).)  In determining that section 4 of Public Law 280 did not provide Congressional consent to allow the county or state to levy a property tax upon the petitioner's mobile home, the Supreme Court reviewed the legislative history of Public Law 280.  In doing so, the court noted: "The primary concern of Congress in enacting [Public Law] 280 that emerges from its sparse legislative history was the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement."  (*Bryan*, *supra*, at p. 379.)  The court also stated there was a "virtual absence of expression of congressional policy or intent respecting [section] 4's grant of civil jurisdiction to the States."  (*Byran*, *supra*, at p. 381.)  In addition, the court observed "the total absence of mention or discussion regarding a congressional intent to confer upon the States an authority to tax Indians or Indian property on reservations."  (*Ibid.*)

The Supreme Court concluded that section 4, subsection (a) was "primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes[.]"  (*Bryan*, *supra*, 426 U.S. at p. 383.)  The court, however, clarified the type of disputes to which it was referring:

> " 'A fair reading of these two clauses suggests that Congress never intended "civil laws" to mean the entire array of state noncriminal laws, but rather that Congress intended "civil laws" to mean those laws which have to do with private rights and status.  Therefore, "civil laws . . . of general application to private persons or private property" would include the laws of contract, tort, marriage, divorce, insanity, descent, etc., but would not include laws declaring or implementing the states' sovereign powers, such as the power to tax, grant franchises, etc.  These are not within the fair meaning of

33

"private" laws.' " (*Id*. at p. 384, fn. 10, quoting Israel & Smithson, Indian Taxation, Tribal Sovereignty and Economic Development (1973) 49 N.D.L.Rev. 267, 296, n. 8.)

We read *Bryan*, *supra*, 426 U.S. 373 as supporting the principle that section 4, subdivision (a) of Public Law 280 does not confer general regulatory control over tribal lands. (See *Bryan*, *supra*, at p. 384.) Twenty-Nine Palms has provided no contrary authority. Therefore, we conclude that Public Law 280 does not allow California to regulate contractor licensing on tribal land and section 4, subdivision (a) does not somehow allow a tribal entity to sue under the CSLL. (See *Bryan*, *supra*, at p. 384; *People ex rel. Dept. of Transportation v. Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 521 (*Naegele*) [holding Public Law 280 did not authorize the state to restrict outdoor advertising insofar as it applied to tribal land].)[5]

In addition to contending that section 4 allows it to bring suit for a violation of section 7031, Twenty-Palms asserts the parties here explicitly agreed to be governed by California law. Thus, Twenty-Nine Palms argues the parties consented to a choice of law provision that provided that California law would apply to each of the Construction Contracts. Cadmus does not address this point.

_____

5    We acknowledge that both *Bryan*, *supra*, 426 U.S. 373 and *Naegele*, *supra*, 38 Cal.3d 509 concern a state trying to enforce its regulatory law on a tribe operating on tribal land. Here, a tribal entity is suing under a California statute that otherwise does not apply on tribal lands. Although this is a different scenario than what is presented in *Bryan* and *Naegele*, we find no basis under Public Law 280 that would allow the tribe to sue in California court under a law that does not apply on tribal lands. Of course, a tribe can create its own contractor licensing laws or adopt laws that mirror the CSLL. In those circumstances, the tribe could sue in superior court to enforce its laws. However, in the instant matter, Twenty-Nine Palms admits that no tribal contractor licensing laws exist.

34

We agree with Twenty-Nine Palms. Each of the Construction Contracts contains a choice of law provision that provides that the contract is governed by California law. We find no impediment in general to a tribal entity entering into a contract with a non-Indian that requires work to be done entirely on tribal lands and agreeing that the contract is governed by California law. (See *Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 10-11.) It is through this choice of law contractual provision that section 7031 applies to the Construction Contracts.

## C. Judgment

Although we determine that the CSLL, including section 7031, applies to the Construction Contracts, we do not automatically affirm the judgment below. Instead, we must evaluate the judgment in consideration of what the Stipulation asked the superior court to do: decide the licensing dispute within the context of determining if the Construction Contracts were legal under *Loving & Evans*, *supra*, 33 Cal.2d 603. This issue is critical to our ultimate analysis because the parties had contracted to go to arbitration, had been participating in the arbitration process (including taking discovery) for over a year, and stayed the arbitration because the parties disagreed whether the arbitrator instead of the court could address the legality of the Construction Contracts.

In granting summary judgment, the superior court, following *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435, ruled that Cadmus could not take the position that section 7031 did not apply. The court therefore found that section 7031 did apply and Cadmus was not a licensed contractor at all times when it performed work under the Construction Contracts. Accordingly, the court ordered judgment in favor of Twenty-

35

Nine Palms on all causes of action and, under the first three causes of action, ordered Cadmus to disgorge what it was paid under Construction Contracts. In regard to the fourth cause of action for declaratory relief, the court reached the following judicial determinations: (1) Cadmus was not a licensed contractor at all times relevant to its work under the Construction Contracts; (2) Twenty-Nine Palms is entitled to disgorgement of all monies paid to Cadmus on the Construction Contracts under section 7031, subdivision (b); (3) Cadmus is barred from pursing its claim for compensation against Twenty-Nine Palms in the arbitration under section 7031, subdivision (a); and (4) the Construction Contracts are illegal and therefore Cadmus is barred from continuing with the arbitration.

Although the court did not explain why it found the Construction Contracts illegal, it appears it did so based on Twenty-Nine Palms's argument that the contracts would be illegal under *Loving & Evans*, *supra*, 33 Cal.2d 603. The court in that case found that "the contract upon which the award was based was illegal and void because of respondents' failure to comply with the licensing requirements." (*Id*. at p. 614.) There, the subject contractor did not hold a contractor's license "either at the time of the making of the contract or at any time while the work was in progress." (*Ibid*.) Yet, to find the Construction Contracts illegal under *Loving & Evans*, the court had to first conclude that section 7031 applied to the contracts.

Here, the superior court followed *Twenty-Nine Palms Enterprises*, *supra*, 210 Cal.App.4th 1435. Indeed, it had no choice but to do so. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.). In *Twenty-Nine Palms Enterprises*, Division Two determined that Cadmus Construction was prohibited

36

from arguing that section 7031 did not apply because it must invoke the tribe's sovereign immunity to do so. (See *Twenty-Nine Palms Enterprises*, *supra*, at pp. 1446-1447.) As we discuss in detail above, we respectfully disagree with Division Two and conclude that California could not regulate contractor licensing on tribal land. Moreover, we find nothing in section 4 of Public Law 280 that would allow Twenty-Nine Palms to assert a claim arising out of a dispute on tribal land under a California regulation that does not otherwise apply. As such, Twenty-Nine Palms could not use section 7031, as a law of general application, to argue that the Construction Contracts were illegal.

Nevertheless, even in the absence of the CSLL applying on tribal land, we agree with Twenty-Nine Palms that the parties here assented to applying California law to the Construction Contracts. Yet, the source of the CSLL in this instance is the contracts themselves. Therefore, if the court found them illegal then California law would no longer govern. Put differently, if the Construction Contracts are the source of the CSLL, including section 7031, subdivision (b), applying to the instant dispute, the CSLL would no longer apply if its source was found to be illegal and void.

Further, we are skeptical that the Construction Contracts are illegal regardless of how the CSLL applies. We are not persuaded that the holding of *Loving & Evans*, *supra*, 33 Cal.2d 603 mandates a court to find a contract entered into by an unlicensed contractor illegal and void. Indeed, our high court explicitly stated this is not the rule: "[T]he CSLL does not automatically void all contracts entered by unlicensed contractors." (*MW Erectors, supra,* 36 Cal.4th at p. 440.) Thus, merely because Cadmus may not have been licensed at the time it entered into the Construction Contracts did not make those

37

contracts illegal without any further analysis. Moreover, because the contracts would not necessarily be illegal simply because Cadmus was not licensed at the time it entered into them, we see no impediment to proceeding with the arbitration and allowing Twenty-Nine Palms to raise a defense under section 7031 at the arbitration. (See *Templo Calvario Spanish Assembly of God v. Gardner Construction Corp.* (2011) 198 Cal.App.4th 509, 519-521 (*Templo*).)

In light of *MW Erectors*, *supra*, 36 Cal.4th 412, within the context of a question regarding the legality of a contract entered into by an unlicensed contractor, *Loving & Evans*, *supra*, 33 Cal.2d 603, at best, stands for the proposition that a contract entered into by an unlicensed contractor that never became licensed at any time during its performance under the contract could be illegal and void. Here, Twenty-Nine Palms does not argue that Cadmus was never licensed when it performed work under the Construction Contracts, but instead, Twenty-Nine Palms contends Cadmus started working prior to being properly licensed. This fact distinguishes the instant action from the facts of *Loving & Evans* where the court noted the subject contractor did not hold a contractor's license "either at the time of the making of the contract or at any time while the work was in progress." (*Id*. at p. 614.)

Accordingly, independent of considering whether section 7031 applied here, under the record before us, we do not read *Loving & Evans* as supporting the superior court's finding that the Construction Contracts were illegal.

Having determined that the superior court erred in its judicial determination that the Construction Contracts were illegal and that Cadmus was barred from pursuing its

38

claims in arbitration, we next evaluate what impact, if any, this error has on the remainder of the judgment. To do so, we again return to the Stipulation and consider the unique procedural nature of this case.

The parties were engaged in arbitration to resolve their disputes under the Construction Contracts. No one challenged that arbitration was the appropriate dispute resolution forum. However, when Twenty-Nine Palms discovered that Cadmus may not have been licensed during all times it performed work under the Construction Contracts, it believed that the subject contracts were then illegal and there would be no enforceable arbitration provision. The parties agreed that the superior court would ultimately have final say regarding the legality of the Construction Contracts, but they disagreed when this should occur. Cadmus argued that the arbitration should go forward and after the arbitrator rendered his decision, the superior court could then address whether the contracts were illegal. Twenty-Nine Palms countered that it would be a waste of money and time if the parties completed arbitration only to have a superior court declare the Construction Contracts illegal and then vacate any arbitration award. To resolve this impasse, the parties signed the Stipulation and submitted the illegality issue to the superior court, which, presumably, would have to resolve whether Cadmus was properly licensed to ultimately answer the illegality question.

We conclude that the court erred in finding the Construction Contracts illegal under the CSLL. Because the contracts were legal, the arbitration provisions remained enforceable, and the arbitration could proceed. At that point, the superior court should have referred the matter back to the arbitrator to resolve the dispute. It did not need to

39

determine whether Cadmus was properly licensed at all times because the Construction Contracts were legal. Therefore, the arbitrator could have made a determination if Cadmus was properly licensed under California law as required by the Construction Contracts.[6] (See *Templo*, *supra*, 198 Cal.App.4th at pp. 519-521.)

Because we determine that this matter should be referred to the arbitrator, we do not reach Cadmus's additional contention that a triable issue of material fact exists as to whether it was properly licensed at the relevant times under the Construction Contracts.

---

[6]    At oral argument, in response to questioning by this court, Twenty-Nine Palms insisted that it did not matter whether the Construction Contracts were illegal. Because the superior court found that Cadmus was not properly licensed, Twenty-Nine Palms now claims that such a finding mandates we affirm the judgment regardless of whether the Construction Contracts were legal. It is well established that we need not consider claims raised for the first time at oral argument. (See *Animal Protection & Rescue League v. City of San Diego* (2015) 237 Cal.App.4th 99, 107, fn. 5.) Moreover, this position is contrary to Twenty-Nine Palms's many representations to the superior court that the purpose of its complaint was for the court to determine the legality of the Construction Contracts. Indeed, it made the same argument here, asserting the contracts were illegal, and thus, void under *Loving & Evans*, *supra*, 33 Cal.2d 603. And we also are not impressed by Twenty-Nine Palms's new argument raised at oral argument that the superior court, not the arbitrator, must determine whether a contractor is properly licensed under the CSLL. Twenty-Nine Palms has not offered this argument previously and did not provide any authority to support this position. Our independent research uncovered a case in which the Court of Appeal determined that a court may conduct a de novo view of an arbitration award if that award violated an explicit legislative expression of public policy. (See *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 38 ["We conclude that section 7031 constitutes an 'explicit legislative expression of public policy,' that if not enforced by the arbitrator, constitutes grounds for judicial review."].) However, *Ahdout* does not stand for the proposition that an arbitrator cannot decide the licensing issue during arbitration. It merely offers another scenario in which a court could review an arbitration award independently.

DISPOSITION

The judgment is reversed and remanded back to the superior court. The superior court is ordered to enter an order denying Twenty-Nine Palms's motion for summary judgment, finding the Construction Contracts legal, and referring the matter back to arbitration. The parties are to bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


McDONALD, J.

41